IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**BLUESTONE COAL CORPORATION, a**
**West Virginia Corporation; and,**
**DOUBLE-BONUS MINING COMPANY,**
**a West Virginia Corporation,**

     **Plaintiffs,**

**v.**                                    **Civil Action No.**     <u>2:16-cv-06098</u>

**PINNACLE MINING COMPANY, LLC,**
**a Delaware corporation; and,**
**TARGET DRILLING, INC., a Pennsylvania**
**Corporation.**

     **Defendants.**

## COMPLAINT

NOW COME Plaintiffs, Bluestone Coal Corporation and Double-Bonus Mining Company, by and through their counsel, R. Scott Long, Esquire, and David F. Nelson, Esquire, and the law firm of Hendrickson & Long, PLLC, and as their Complaint state the following:

## PARTIES

1.    Plaintiff Bluestone Coal Corporation ("Bluestone Coal") is a West Virginia corporation having its principal place of business in Raleigh County, West Virginia. Bluestone Coal is the permit holder for underground coal mining operations at Mine No. 65 located in Wyoming County, West Virginia.

2.    Plaintiff Double-Bonus Mining Company ("Double-Bonus") is a West Virginia corporation having its principal place of business in Raleigh County, West Virginia.

3.      Defendant Pinnacle Mining Company, LLC ("Pinnacle") is a Delaware corporation having its designated office address on file with the West Virginia Secretary of State at 209 West Washington Street, Charleston, West Virginia, with a Notice of Process Address at the same Kanawha County location.   At all times relevant hereto, Pinnacle has, among other things, operated a coal mine and conducted coal mining operations in West Virginia.

4.      Defendant Target Drilling, Inc., ("Target") is a Pennsylvania Corporation registered to do business in West Virginia.   Target has a principal office located at 1112 Glacier Drive, Smithton, Pennsylvania, but upon information and belief performs services related to, *inter alia,* the mining, oil and natural gas extraction industries, and does business in Kanawha County, West Virginia, and throughout West Virginia.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this district because both defendants have minimum business contacts in Kanawha County and throughout southern West Virginia, sufficient to subject them to personal jurisdiction in this district and division pursuant to 28 U.S.C. § 1391(d).

## FACTUAL BACKGROUND

7.      At all times relevant hereto, Bluestone has been the mineral owner of coal mining rights for an operation commonly known as the Double-Bonus Mine No. 65, ("Mine No. 65") which is operating under West Virginia Department of Environmental Protection (WVDEP) Permit No. U-4002-02 and Federal MSHA ID 46-09020.   This coal mining operation has

2

recovered coal from leasing rights in the Little Fire Creek coal seam and is situate in Wyoming County, West Virginia.   Plaintiff Bluestone's operating rights under these permits have been assigned to Plaintiff Double-Bonus.

8.     Bluestone Coal and Double-Bonus own and/or have property interests in the underground mining equipment, structures and materials utilized to extract coal from Mine No. 65.

9.     Pinnacle is the active operator of an underground mining operation which operates under WVDEP Permit No. UO-204-83A and MSHA Id. 46-01816 ("Pinnacle Mine").   The Pinnacle Mine is located several hundred feet below the level of Mine No. 65.

10.     In early 2013, Pinnacle contacted Plaintiffs seeking permission to drill a vertical borehole shaft from the surface through a void (or inactive) area of Mine No. 65 located in a sealed-off portion of the mine. The borehole shaft was to be used for the purpose of installing a vertical dewatering system to enable Pinnacle to control water in its mining seam located approximately 420 feet below Mine No. 65. The vertical dewatering system would include not only drilling the borehole through Mine No. 65 to the Pinnacle Mine below, but also running and installing casings, pipes, pumps and other appurtenances for the system to pump water from the Pinnacle Mine to the surface.   Plaintiffs only gave Pinnacle permission to proceed with the penetration of its mine based on the plans that had been submitted to them.

11.     Pinnacle or its agents prepared and submitted the necessary paperwork with the Mine Safety and Health Administration ("MSHA") to conduct the borehole drilling.   MSHA approval was necessary because the drilling would necessarily run the risk of fracturing or damaging the strata above Mine No. 65, which could allow the incursion of gas or water into the

3

void areas of the mine endangering personnel in the mine, thereby necessitating a modification of a ventilation plan.

12.     Parts of the plan were submitted to the MSHA District 12 office and the West Virginia Office of Miners' Health, Safety and Training on May 13, 2013.   MSHA subsequently approved the Pinnacle plan on May 21, 2013.

13.     Upon information and belief, the efforts to develop the borehole through the void areas of Mine No. 65 commenced in June of 2013, and, after interruption, continued through February of 2014.   The drilling activities were undertaken by Pinnacle, together with Target, the principal drilling contractor on the project.

14.     Target, on behalf of and with the full consent, supervision and approval of Pinnacle, drilled the borehole such that it penetrated through an inactive portion of Mine No. 65. Defendants then attempted to install casing into the borehole.   During the course of the borehole development, Defendants materially deviated from the plans submitted to Plaintiffs and approved by MSHA.   Defendants did not notify Defendants of the material changes to the borehole development plan they undertook, despite having a duty to do so.   Upon information and belief, Defendants also did not notify MSHA of the material changes to the borehole development plan that they undertook, despite having a duty to do so.

15.     During the course of drilling the borehole, Defendants became specifically aware that the drilling of the borehole had penetrated through one or more underground aquifers or water sources.   Defendants also knew that the portion of the Mine No. 65 where the borehole was drilled had been sealed-off from the active mining operations, and, therefore, that the potential for inundation of water into the mine relating to an improperly developed borehole could not be

4

detected by Plaintiffs until the sealed areas of the subject mine had been flooded.   Despite this awareness, Defendants took no steps to notify Plaintiffs or MSHA of the fact that the borehole breached the aquifer.   Defendants further failed to take any measures to isolate the aquifer to prevent aquifer water from entering the borehole.

16.     Subsequently, Defendants, despite knowing that the borehole was designed to penetrate into Plaintiffs' mine in a void area, modified the drilling, casing and cementing plan in a manner which assumed that the borehole had penetrated the Defendants' mine through solid material.   Given the additional presence of an active and non-isolated aquifer interacting with the borehole, this method of cementing substantially and materially increased the chance that the process of cementing the casing annulus would be incomplete or ineffective in protecting Plaintiffs' mine from water intrusion from above.

17.     Defendants did not notify Plaintiffs or MSHA of the material change to this aspect of the drilling and cementing plan. Nor did Defendants otherwise seek Plaintiffs' consent to their activities.

18.     As a proximate result of Defendants negligent and intentional deviation from the approved drilling plan, the resulting Pinnacle borehole created an elevated and unreasonable risk of allowing the penetration of water into the sealed areas of Mine No. 65.

19.     The inactive, sealed-off portion of Mine No. 65 through which Pinnacle and/or its agent(s) drilled the borehole had been inactive for approximately eight (8) years prior to the commencement of drilling operations.   During that time, the amount of water seeping into the inactive, sealed areas had been ascertained, measured, monitored, and controlled.

20.     In March of 2015, Plaintiffs first became aware of a dramatic increase in the amount of water behind the sealed areas of its mine, both in the section in which the borehole had penetrated and in an adjacent sealed section at a lower elevation.   As a result of the unanticipated increase in the pressure of the water behind the barrier seals, the water began to bypass the existing barriers and seals, permanently damaging the integrity of the seals and the surrounding strata such that they could no longer prevent the flow of water and/or the atmospheric exchange between the sealed areas and the active mine works.

21.     Plaintiffs immediately undertook efforts to pump and dewater the affected mine areas.   While their efforts were initially effective in stabilizing the flooding conditions, these conditions were only temporary and Plaintiffs were unable to remediate or repair the damage to the mine seals, all of which prevented Plaintiffs from recovering extensive underground equipment, structures and materials.

22.     Despite Plaintiffs' reasonable efforts to repair, remediate, and mitigate their damages, mining operations in Mine No. 65 have been terminated due to the combined loss of the atmospheric integrity of the mine void seals and because of uncontrollable flooding at all elevations levels below the mine portal.

23.     As a direct and proximate result of these conditions, Plaintiffs were forced to abandon all underground mining equipment, materials and structures located in the mine at the time of the commencement of the flooding and all of these items have been lost.   As a direct proximate result of the flooding, Plaintiffs' unmined and unrecovered coal reserves accessible through the Double-Bonus Mine No. 65 have been sterilized (permanently lost). Additional

adjacent coal reserves that would have been accessible through Mine No. 65 have also been sterilized and/or impaired as a result of the loss of the subject mine.

24.     As a direct and proximate result of this emergency caused by Defendants' borehole drilling activities, Plaintiffs were forced to expend monies to respond to the water inundation emergency in the form of expended manpower, engineering resources, equipment costs, power bills, and material costs.   Plaintiffs' damages were proximately caused by Defendants' borehole drilling activities.   These damages, the damages associated with the efforts to save Mine No. 65 and the damages related to the subsequent loss of the Mine No. 65 continue to be calculated. However, Plaintiffs' damages are believed to be equal to or in excess of Eighty Million Dollars ($80,000,000).

25.     The unauthorized and/or negligent activities performed by the Defendants in the borehole-drilling project were the sole proximate cause of the flooding within Plaintiffs' mine.

26.     In April of 2015, Plaintiffs were forced to file a Complaint seeking a temporary injunction in order to compel the Pinnacle to provide Plaintiffs with all records relating to the dewatering project.   These records were provided in May of 2015, at which point, for the first time, Plaintiffs were able to begin their investigation into this matter, only after which did Plaintiffs discover the details of Defendants' activities and the scope of their material modifications to the approved drilling project.[1]

## COUNT I –NEGLIGENCE

27.     Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 26 above as if set forth herein.

---

[1] Subsequent to the filing of that civil action, Defendant Pinnacle was acquired by new ownership and has changed its designated principal office.   Defendant Target was not a party to that action.

28.     Defendants had a legal duty to exercise reasonable care in properly drilling, encasing, cementing and securing the borehole such that it did not cause subterranean water sources, such as aquifers, to flood Mine No. 65.

29.     Defendants had a legal duty to follow the submitted and approved Request of Ventilation Revision to Install a Vertical Dewatering Borehole approved by MSHA on May 21, 2013, including, but not limited to, the full grouting of the borehole above and immediately below Plaintiffs' mine.

30.     Defendants breached their duty and failed to exercise reasonable care under the circumstances inasmuch as they: drilled a borehole and installed casing in a defective and negligent manner such that an underground aquifer was breached; failed to take steps to isolate the aquifer from the borehole and/or Plaintiffs' mine; drilled a borehole substantially off-center and with an unacceptable deviation due to improper drilling techniques; abandoned the original hole development plan without notification to Plaintiffs; and, utilized high-risk and unreliable techniques to attempt to complete the cementing process, all of which were done with the full knowledge of both Pinnacle and Target, and all of which proximately caused Plaintiffs' mine to eventually flood.

31.     The possibility of inadequately encasing or cementing a borehole such that subterranean water sources could inundate an underlying mine, such as Mine No. 65, was a well-known hazard that a reasonably prudent coal operator and a reasonably prudent drilling company had a duty to take all reasonable steps to avoid.

32.     Defendants breached their foregoing duties and proximately caused damages and irreparable harm to the Plaintiffs' mining estates, mine operations, personnel and equipment in amounts which continue to be determined.

## COUNT II - TRESPASS

33.     Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 33 above as if set forth herein.

34.     At all times relevant, Plaintiffs had a leasehold and/or cognizable right to the mining of coal in the Little Fire Creek Coal seam within the boundaries of their mine operations, including the sealed portion of the mine affected by the subject borehole.     Plaintiffs had a right to mine coal in the adjacent developed and undeveloped portions of the subject seam.

35.     Defendants had Plaintiffs' permission to penetrate Mine No. 65 only as specifically requested and proposed in the MSHA approved plan. By materially changing the nature of the borehole development, including the modification of the drilling techniques, the increased size of the annulus between the casing and the well bore, the assumption during the cementing process that the well bore had not penetrated a void area, and failure to take measures to isolate an active aquifer from the borehole, Defendants departed from the scope of their lawful authority to engage in drilling activities through Plaintiffs' property and interests, caused damages, and thereby committed the tort of trespass.

36.     Defendants' trespass proximately caused substantial damages and irreparable harm to the Plaintiffs' mining estates, mine operations, personnel and equipment in amounts which continue to be determined.

## COUNT III – PUNITIVE DAMAGES FOR WILLFUL, WANTON OR RECKLESS CONDUCT

37.     Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 36 above as if set forth herein.

38.     Plaintiffs allege that when the Defendants undertook actions to modify the details of the drilling plan and failed to notify the Plaintiffs' of their actions, along with the risks associated with the same, they acted knowingly, willfully, intentionally, wantonly and/or with reckless disregard for the consequence of the potential harm to Plaintiffs in a manner sufficient to justify the award of punitive and/or exemplary damages in an amount sufficient to deter Defendants or others from such conduct in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that they be awarded judgment against the Defendants, jointly and severally; that they be awarded damages, past and future, incurred as a result of Defendants' conduct; that they be also be awarded punitive damages in an amount sufficient to deter Defendants or other similarly situated parties from such future conduct; that they be awarded costs, including reasonable attorneys' fees incurred in the bringing of this action; and such other relief as this Court may deem appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,

**BLUESTONE COAL COMPANY and
DOUBLE -BONUS MINING COMPANY,**

**By Counsel.**

 */s/ R. Scott Long*                07/07/2016
R.   Scott Long, Esquire (#2238)
David F. Nelson, Esquire (#5754)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (fax)
scott@handl.com
dnelson@handl.com