```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON


_____x
                              :
BLUESTONE COAL CORPORATION, a :
West Virginia Corporation, and:
DOUBLE-BONUS MINING COMPANY, a:      Civil Action
West Virginia Corporation,    :
                              :
                Plaintiffs,   :      No. 2:16-cv-06098
                              :
v.                            :
                              :      Date:  May 2, 2018
PINNACLE MINING COMPANY, LLC, :
A Delaware corporation, and   :
TARGET DRILLING, INC., a      :
Pennsylvania corporation,     :
                              :
                Defendants.   :
_____x
```

```
          TRANSCRIPT OF TELEPHONIC CONFERENCE HELD
     BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
               UNITED STATES DISTRICT COURT
                IN CHARLESTON, WEST VIRGINIA
```

APPEARANCES:

For the Plaintiffs:        DAVID F. NELSON, ESQ.
                           R. SCOTT LONG, ESQ.
                           Hendrickson & Long
                           P. O. Box 11070
                           Charleston, WV 25339

For the Defendants:        EDGAR A. POE, ESQ.
                           Pullin Fowler Flanagan Brown &
                           Poe
                           901 Quarrier Street
                           Charleston, WV 25301

                           JOHN L. MACCORKLE, ESQ.
                           MacCorkle Lavender
                           P. O. Box 3283
                           Charleston, WV 25332

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

(Appearances continued)

DIANA LEIGH JOHNSON, ESQ.
Bowles Rice
P. O. Box 1386
Charleston, WV 25325-1386

PETER J. RAUPP, ESQ.
JOHN JOSEPH MEADOWS,  ESQ.
Steptoe & Johnson
P. O. Box 1588
Charleston, WV 25326-1588

DENNIS R. ROSE, ESQ.
Hahn Loeser & Parks
Suite 2800
200 Public Square
Cleveland, OH 44114

MARC E. WILLIAMS, ESQ.
Nelson Mullins Riley &
Scarborough
P. O. Box 1856
Huntington, WV 25719-1856

BRENT MICKUM, ESQ.

Court Reporter:          Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1      PROCEEDINGS had before The Honorable Thomas E.

2    Johnston, Chief Judge, United States District Court,

3    Southern District of West Virginia, in Charleston, West

4    Virginia, on May 2, 2018, at 2:15 p.m., as follows:

5           COURTROOM DEPUTY CLERK:  Hi.  It's Staci in Judge

6    Johnston's chambers.  Who do I have on the line for the

7    plaintiffs?

8           MR. LONG:  Scott Long and Dave Nelson.

9           COURTROOM DEPUTY CLERK:  And how about for the

10   defendants?

11          MR. POE:  For Target, this is Ed Poe, P-o-e.

12          MR. MACCORKLE:  This is John MacCorkle for the

13   third-party defendant.

14          MS. JOHNSON:  Diana Johnson for TAM.  We're hoping

15   that John Meadows or Peter Raupp for Steptoe & Johnson is

16   on.

17          MR. RAUPP:  This is Peter Raupp.  My understanding

18   is that John Meadows is supposed to be on the phone, as

19   well.

20          MR. MEADOWS:  I'm on the phone, guys.  I'm out of

21   town.  I apologize.  I tried to talk earlier, but I didn't

22   want to talk over somebody else.

23          MR. ROSE:  And this is Dennis Rose for Cliffs

24   Natural Resources.

25             This is Brent Mickum, in-house counsel for Mission

```
1    Coal, Pinnacle.
2              UNIDENTIFIED SPEAKER:  I know we received an
3    e-mail message from Marc Williams that he was trying to get
4    connected, but had been disconnected when trying to dial in.
5    So, I don't know whether he's here or not.
6              MR. MEADOWS:  He would be the last missing
7    counsel.
8              UNIDENTIFIED SPEAKER:  I got kicked out once
9    before I got in.
10             MR. MEADOWS:  Okay.
11             MR. ZERVOS:  Yes, Mike Zervos, President of
12   Mission Coal.
13             COURTROOM DEPUTY CLERK:  I hear people still
14   dinging, so I'll give just a minute to see if there's
15   anybody else that hasn't made an appearance.
16        (Pause)
17             COURTROOM DEPUTY CLERK:  Okay, I'm going to go
18   back through the people that I got an appearance for and see
19   if I've missed anybody.  Dave Nelson, Scott Long, Ed Poe,
20   Diana Johnson, John MacCorkle, Dennis Rose, Brent Mickum,
21   Mike Zervos, Peter Raupp, John Meadows.
22        Okay.  I'm going to put you guys on mute and I'll get
23   the judge.  Thank you.
24             MR. MEADOWS:  Thank you.
25        (Pause)
```

1          THE COURT:  Good afternoon.  This is Judge

2    Johnston.  This is a telephonic status conference in

3    Bluestone v. Pinnacle, civil action number 2:15-cv-06098.  I

4    have here in my chambers my law clerk, Hunter Yoches; my

5    courtroom deputy, Staci Wilson; and my court reporter, Ayme

6    Cochran.

7       We are on the record.  I'll ask that you note your

8    appearances and I also -- I'm going to ask you, if you're

9    not speaking, to mute your phones because I don't want to

10   hear you tapping on your keyboards or walking around or

11   whatever.  So, please note your appearances.

12          MR. LONG:  Scott Long and Dave Nelson for the

13   plaintiffs, Your Honor.

14          MR. POE:  Ed Poe for Target.

15          MR. WILLIAMS:  Marc Williams for Cliffs Natural

16   Resources.

17          MR. ROSE:  Dennis Rose for Cliffs Natural

18   Resources.

19          MS. JOHNSON:  Diana Johnson for TAM International.

20          MR. MEADOWS:  John Meadows and Peter Raupp on

21   behalf of Pinnacle and Seneca.

22          MR. MACCORKLE:  John MacCorkle on behalf of Ken &

23   Coy Rock.

24          MR. MICKUM:  Brent Mickum, General Counsel for

25   Pinnacle.

1          THE COURT:  All right.  I think that's everybody.

2     I set this because apparently settlement was reached with

3     Target and everybody's signed onto the order except for

4     Pinnacle.  I've never had to have a status conference over

5     something like this before.  So, what's the problem?

6          MR. MEADOWS:  Well, Your Honor, if I may, this is

7     John Meadows on behalf Pinnacle and Seneca.  I guess, since

8     I'm the lone man standing at this point, I'll take up the

9     mantle of explaining to the Court where we are.

10         To begin with, Your Honor, first, we are still

11    attempting to determine how -- our contentions about this

12    proposed settlement.  We are still attempting to determine

13    what our objections are.  I am happy to give the Court a bit

14    of a preview of what we would put in a response brief, which

15    we believe is due on Friday, under the regular Federal Rules

16    of Civil Procedure with respect to ruling -- or to filing a

17    response to the motion that was filed but, of course, we may

18    have other things that we wish to talk about by Friday.

19         I'm also happy, if the Court is so inclined, just to

20    give some explanation for why we've reached some of these

21    conclusions, but I just wanted to put that information out

22    there first to begin with, Your Honor.

23         But, to be specific, again, I represent Pinnacle Mining

24    Company LLC and I represent Seneca.  And these entities,

25    Your Honor, you're well aware of them.  We own and operate a

1    coal mine in Wyoming County and this is a drilling case.  My

2    client is a coal mine.  They hired an independent contractor

3    driller to do this drilling.  So, one of our -- one of the

4    tenets that we have to examine is whether we're going to

5    consent to a good faith settlement and whether this is arm's

6    length and all of the other requirements, one of the things

7    that we have to examine is the value of the settlement

8    versus the total amount of allegations in the case.

9        And, in this case, Your Honor, we are very concerned

10   that the settlement is for $5 million in a case where

11   plaintiffs have attempted to tell us under Rule 26 that they

12   have $650 million in damages.  So, this settlement settles

13   out one of the principal actors in the case, the driller in

14   a drilling case, for about seven-tenths of one percent of

15   the total amount of alleged damages.

16       Further, as best we can determine, at this point, Your

17   Honor, this doesn't even occupy all the policy limits that

18   were available to Target, nor does the settlement involve

19   any of Target's own money.  All of this seems to be coming

20   just from insurance settlement and, for that reason, that's

21   one of the arguments that we would make, if we choose on

22   Friday to file an objection to the settlement and, as I

23   mentioned, we're still considering it.

24       The second issue that we have wrangled with here, Your

25   Honor, is specifically the interplay between the liabilities

1    of Target and the other defendants have not been

2    particularly well-examined at this point.  Discovery is

3    ongoing at this stage.  And, specifically, many of us sent

4    out discovery to the plaintiffs to ask about what

5    allegations Target was dispersing.

6         And although discovery, for instance, was due to be

7    returned to my client by April 20th, several weeks ago, we

8    didn't receive written responses to discovery until last

9    night.  So, this gives us pause to understand exactly what

10   it is we're supposed to just believe and take their word for

11   it that this will cover expenses where Target may have

12   alleged to have done things.  We don't really know what

13   those are vis-a-vis our clients and that's something that we

14   believe we should be able to explore as the settlement is

15   being finalized in addition.  So, we're concerned about

16   that.

17        We are also -- in a particular way, Your Honor, we are

18   concerned that the settlement at stake could actually be

19   dispositive, although they've alleged $600-plus million in

20   damages, and tell us that this is what the condition of the

21   mine is and that we have to accept it.  We've asked to go in

22   the mine and have a look to determine, is this something

23   that Target did, or is this something that someone else has

24   done.  We filed a Rule 34 request sometime ago and the

25   plaintiffs have refused to allow us to enter the mine and

1    we're going to be preparing a Motion to Compel or some other

2    effort in advance to get some resolution on this but, at

3    this point, we just simply haven't done enough discovery to

4    understand where the various parties stand in relation to

5    each other.  We think that once we've filed the Motion to

6    Compel and we have the opportunity to go into the mine, that

7    we're going to be able to understand that.

8        But we're telling Your Honor the reason why I

9    determined that maybe this isn't a $650 million case as

10   alleged is that many of the allegations are the comments

11   back so far from the plaintiffs have been, "You can't get

12   into our mine.  Our mine is closed.  It's been fully

13   flooded."

14       Every expert that we've talked to, Your Honor, says

15   that they think that for an amount, in fact, less than this

16   settlement proposal, plaintiffs could de-water this mine,

17   de-gas it and, in fact, rehabilitate it.  And not only could

18   we go in to see what's going on, but they could mine this

19   coal that they claim is forever lost.

20       And so, we think that those issues are going to

21   interplay if Target has, in fact, settled this case or is

22   attempting to settle this case for $5 million.  Not only may

23   that be the total amount of money that this mine has

24   suffered in damages such to get it operational again, but we

25   expect and fully believe that we're going to hear from

1    plaintiffs, "It's too expensive for us to go in and de-water

2    and de-gas this mine for you to go in and inspect it."  And,

3    obviously, if they're going to make that argument having

4    just received $5 million in proceeds, we're very concerned

5    that they'll make that argument notwithstanding the money,

6    and we would like to consider whether they ought to pay that

7    money in to court, whether the money ought to be withheld

8    until we can get together and have all the insurers get

9    involved.

10        And that, Your Honor, frees up one additional talking

11   point that I wanted to present to the Court this afternoon.

12   My client had put both Target's carriers on notice because

13   we're the additional insured under these policies for which

14   they're paying out.  There are other parties here that are

15   additional insureds under those policies.

16        We've also put the carriers who represent or who have

17   provided insurance for Cliff and Pinnacle on notice as well

18   and, at this stage, Your Honor, these carriers have not

19   responded to us and we believe that they have either

20   violated UTPA or created a situation that is now ripe for a

21   declaratory judgment matter.  It is my client's intention to

22   file a dec action, or file several dec actions in this case

23   within the next 30-45 days just to pursue those claims, and

24   to bring all of the insurers to the table, as opposed to try

25   and settle this out piecemeal with one of the insurers who

```
 1    has some complicated issues.

 2         So, I want to represent to the Court that not only are

 3    we intending to do that but, in addition, other counsel, in

 4    this case will be entering this matter, I would say, within

 5    48-72 hours to make an appearance.  And one case is

 6    interested in continuing this -- both discovery on these

 7    insurance issues and for these specific dec actions in order

 8    to bring the insurers to bear.

 9         And, Your Honor, the amount of insurance available --

10              THE COURT:  John -- John --

11              MR. MEADOWS:  (Unintelligible)

12              THE COURT:  John --

13              MR. MEADOWS:  that have -- yes, sir?

14              THE COURT:  I need you to slow down a little bit.

15              MR. MEADOWS:  I apologize, Your Honor.  I'm trying

16    to get through a lot of this information for you.

17              THE COURT:  Well, that won't be in the record if

18    you don't slow down.

19              MR. MEADOWS:  I apologize to you and Ayme, Judge.

20         But the amount of money that will available from those

21    policies is significant.  It's $125 million.  So -- or more.

22    So, even if I'm wrong with my belief -- and good faith

23    belief -- that this case really isn't a $600 million case,

24    there appears to be ample coverage that might be available,

25    but we don't see the utility in kicking out a principal
```

1    party against whom very little discovery has been conducted.

2        We'd note that in the motion that was filed and in some

3    of the arguments that have been made, they -- the plaintiffs

4    tend to reflect on the fact that Target will now be able to

5    somehow have less participation in the case now that they're

6    out.  Your Honor, I will represent to the Court we're going

7    to still need to take every deposition of every Target

8    person to determine, again, the responsibilities and

9    liabilities.

10       So, I just want to point out that, in that respect, it,

11   again, doesn't seem to make sense to go ahead and settle one

12   person, one policy, only covering one of the federal

13   insureds that they have to -- that they are required

14   specifically to indemnify or provide coverage for.

15       And, Your Honor, it's more complicated.  We are on the

16   record.  So, there are -- there are other issues that have

17   arisen that I'm going to -- I'm going to attempt to dance

18   around a little bit now, Your Honor, unless we can go off

19   the record.  I don't know what the Court's inclination would

20   be for that.

21           THE COURT:  I -- I think I'd rather stay on the

22   record, John.

23           MR. MEADOWS:  Yes, Your Honor.  I'm glad to.  I

24   will do my dance.

25       So, Your Honor, one other issue arose during the

 1    pendency of these settlement negotiations.  Specifically,

 2    about the same time that we received communications from

 3    plaintiffs telling us that we either needed to agree to this

 4    within 48 hours or forever waive our rights to disagree, or

 5    an order would have to be granted before you to explain our

 6    position, we received communications from Target directly --

 7    not through their counsel who is on this call, Mr. Poe --

 8    but, rather, from Target's own in-house folks calling mine

 9    in-house engineers and miners and, also, Target's in-house

10    counsel calling our lawyers.

11         And they called us at the same time that this

12    Settlement Agreement was being presented to us to tell us

13    that essentially they have concerns over whether this was

14    good faith or arm's length.  They have concerns over whether

15    this settlement was being forced upon them.  They referred

16    to it as "an involuntary settlement".

17         And we've been in communication with them.  I will

18    represent to the Court that much of the information I have

19    about Target and about these little more sensitive and

20    interesting allegations, even from the sense of the

21    conversation as recently as yesterday when Target, again,

22    reaches to us to have communications.

23         I don't want to get into the substance of what Target's

24    concerns are, but what I definitely do want to notify the

25    Court is that we believe that we need a discovery period,

1    maybe even a short one, to investigate some of these issues

2    that Target has raised, where Target has told us essentially

3    that they're concerned that there may have been pollution

4    among coverage counsel, counsel for their insurer, counsel

5    for the plaintiffs, working with the insurance folks.

6         And honestly, Your Honor, I don't represent Target.

7    Mr. Poe, on this call, does.  So, I don't -- I -- I'm in a

8    bit of an adversarial position because they're also a party

9    here, but they're reaching out to me directly and giving me

10   and my client information, which makes us increasingly

11   uncomfortable at this stage to simply accept plaintiffs'

12   representations that this is indeed a good faith and at

13   arm's length and should, therefore, be approved and we ought

14   to withdraw our objections.

15        But this unsolicited communication from Target has

16   greatly confused this matter for us and made us curious

17   about what were those facts that have given them pause and

18   cause to at least communicate with us.

19        And to be honest, Your Honor, we were -- it was

20   interesting because Target would approach us and want to

21   talk to us about working hand-and-glove on this matter and

22   then would inform us that they've been told we were

23   adversaries.  And, again, I hate to get into some of these

24   communications because, obviously, they also have counsel

25   present today.  So, I'm a little bit reluctant, but I still

1    want the Court to be aware.

2        So, just to conclude, I know I've dropped a lot of

3    information on the Court this afternoon in this status

4    conference.  Pinnacle and Seneca don't feel like we have

5    enough information yet to conclude that the settlement is in

6    good faith, so we have to work together to get some limited

7    discovery on these issues.  At the same time, just as a

8    matter of course, I want to the Court to know that we are

9    going to be filing these dec actions and a Motion to Compel

10   for the Rule 34 issues.

11       And, quite frankly -- and we've experienced this in

12   other cases -- with the parties at hand, we would like for

13   the Court to have mediation and pull in these insurers and

14   bring everybody to the table and assist us in the process of

15   making sure that everybody is here so that we can move

16   forward and work with that.

17       And finally, Your Honor, just as a matter of procedure,

18   we're going to ask the Court -- I don't know if we'll do it

19   in a response to you Friday or at some other stage -- for a

20   little additional time.  We were working, again, with all

21   the defendants to deal with expert issues, to deal with

22   strategy, and we had anticipated robust assistance from

23   Target based on what Target had told us.  Now, that isn't

24   what it was borne out to be and, again, whether those wires

25   were crossed or whether -- that some kind of improper

1    communication happened that we don't know about, I don't

2    know, but we would like the opportunity, Your Honor, to look

3    at it.  We'd like not to have them finalize the settlement

4    now.  If there's someone who can hold and pay the money, we

5    could pay it in to the court and let the court hold that and

6    what other insurance proceeds become available to work out

7    the issues in the case.

8         But, again, I'd reserve the right to add and delete if

9    we file something on Friday, Your Honor, but I wanted you to

10   know at least what those pendent issues were, and why they

11   gave us cause to pause and why we're simply not acquiescing

12   and agreeing to what -- to the $500 million in cash to

13   resolve the case.  Those are our general positions, Your

14   Honor.

15            THE COURT:  All right.  I want to hear from

16   Bluestone in a moment.  But, first, I think, Mr. Poe, do you

17   have anything you want to say at this point?

18            MR. POE:  Well, Your Honor, if the Court has any

19   questions, I'd be happy to respond directly, but this is the

20   first time I've heard Pinnacle express those issues to me.

21   So, I don't have any immediate response, but I will -- I

22   will respond to any questions the Court asks.

23            THE COURT:  I've got lots of questions, but I

24   wanted to give you an opportunity to say something since

25   your name came up quite a bit in Mr. Meadows' comments.

1    I'll take that as "I want to deal with it later."

2                 MR. POE:  Well, that's fine, Judge.

3                 THE COURT:  All right.  All right.  So, let's hear

4    what Bluestone has to say.

5                 MR. LONG:  Your Honor, Scott Long here.  I've got

6    to say, in 35 years, this is my -- I've been practicing law

7    and I thought -- I thought I'd heard everything, but this

8    really tops the cake.  We settled the case for $5 million.

9    We have the right to choose when we want to settle and for

10   how much.  We had grave concerns when we settled the case as

11   to available insurance coverage for Target.

12       And there was a dec action pending in Pennsylvania, I

13   think at one point, and Pinnacle was a defendant and chose

14   to get out of that litigation, but the reality is, we became

15   convinced there are real issues with insurance.  Therefore

16   -- and issues of whether -- the liability of Target

17   necessarily going forward.

18       We decided to take the settlement.  We think it's a

19   very good settlement.  The issue before the Court is not

20   about dec actions down the road, not about what they might

21   find.  It's whether the settlement was in good faith.  And

22   they essentially have to show fraud or collusion and I

23   didn't hear one -- other than assertions that there may be

24   something, not one fact was stated as to fraud or collusion.

25       The insurance companies for Target decided they wanted

1    to settle the case.  They saw that there was a risk and they

2    chose to settle.  As part of the settlement, we have to have

3    claims against Target, obviously, dismissed.  We tried to do

4    that by stipulation under Rule 41(a).  That didn't work.  We

5    asked for a status conference under Rule 16(b)(5) to see if

6    the Court would assist us in our settlement.  We also filed

7    a motion under Rule 41(a)(2) to have the Target claim

8    dismissed with prejudice.

9         We also, in the settlement, Your Honor, settled any

10   claim we might have against the remaining defendants

11   resulting solely or based solely on Target's acts or

12   omissions, which is frankly one step further than a typical

13   settlement to -- that was at Target's insistence and we were

14   good with that.  I see no basis that we can't settle the

15   case with the defendant when we want to, when we analyzed

16   the risks of not settling, and the client opts to settle.

17   This is just a stalling tactic.  There's been ample

18   opportunity for the defendants to do discovery had they so

19   chosen.

20              THE COURT:  Other than who I've heard from

21   already, does anybody else have anything to say?

22              MR. NELSON:  Your Honor, Dave Nelson on behalf of

23   Bluestone.  And I would add, Mr. Meadows threw the whole

24   kitchen sink at you in his explanation.  Mr. Long covered

25   all the issues relevant to our motion.  But with respect to

1    some of the issues raised by Mr. Meadows, they have zero to

2    do with the issues before the Court.

3        If the parties want to mediate, we can mediate.  That's

4    not going to change the amount of insurance coverage

5    available to Target.  There's not been a suggestion that

6    Target has got assets.  The issues about trying to find

7    alternative ways in this case, we're wide open and willing

8    to proceed with.  This is not an opportunity to the

9    exclusion of the other defendants in the case.  But we have

10   reached an agreement with Target and the agreement is

11   clearly facially adequate.

12       Mr. Meadows brought up an issue regarding this Rule 34

13   exam issue.  Your Honor, the mine is flooded.  It's under

14   water.  You cannot enter it.  We provided notice to them.

15   Just so the Court knows, we provided written notice to them

16   in response to their request that the mine is closed by an

17   MSHA order and is physically under water.  And we don't have

18   an obligation to pump out a mine and provide scuba

19   equipment, but if this issue is of concern to the Court, I

20   wanted to make sure you were aware of the fact that this is

21   not some sort of issue with respect to our client wanting to

22   obstruct some aspect of discovery in this case.

23       And with respect to the discovery that we responded

24   with that were suggested in Mr. Meadows' discussion, so that

25   the Court is aware, we provided ample extensions upon

1   request to all the other parties in this case.  We've worked

2   cooperatively to defend their Motions to Compel.  The

3   discovery interchange has been free-flowing.  And today is

4   the first time I have heard a concern of anyone over a

5   discovery issue.

6       So, this has not been a contention case in terms of

7   what has been getting accomplished.  We are hearing all of

8   these concerns for the first time in this status conference

9   despite the fact that we have made calls and we have written

10  e-mails and written letters asking for someone to advise us

11  of any issue and we hear about it now for the first time.

12              THE COURT:  All right.

13              MR. MEADOWS:  Your Honor --

14              THE COURT:  Mr. Meadows, I mean, I'm having

15  trouble understanding here what -- you did throw a lot of

16  stuff at me and I'm inclined to think that a lot of that

17  stuff is -- are issues that will -- or can be continued --

18  I'm not saying this right -- can continue to be live even

19  after Target settles.  So, if you want to file something on

20  Friday, that's fine, and I'll take a look at it, but I think

21  you're going to have a high bar to convince me that these

22  two parties can't settle a claim that -- when you're not one

23  of the parties.  So --

24              MR. MEADOWS:  Your Honor, I appreciate that, and

25  we are cognizant of what we have, the high burden we have to

1    prove in order to tell these parties that they can't settle.

2    And, Your Honor, I am just as perplexed, having heard from

3    Target's in-house counsel calling and giving me some of

4    these details.  These details are new to me, many of them.

5    So, I wanted to be clear with the Court on all of the issues

6    that were outstanding so that it understood why we have been

7    reluctant or hesitant to acquiesce to something that, I

8    agree with the Court and everyone, has a very high burden.

9              MR. POE:  Your Honor?

10             THE COURT:  Yes?  Who is that?

11             MR. POE:  Your Honor, this is Ed Poe.

12             THE COURT:  Yes.

13             MR. POE:  There's been some conjecture, I guess,

14   by Pinnacle's counsel in regard to Target's communications

15   with individuals at Pinnacle and that's -- let me assure the

16   Court that that is not at my request or even done with my

17   knowledge.

18        Secondly, I can represent to the Court that Target has

19   consented with the insurance carriers to this settlement.

20   So, to the extent that this is a close-knit group of

21   drillers and miners in Southern West Virginia and they have

22   ongoing relationships, I suppose I could speculate that

23   maybe they would talk among themselves.

24        But let me be clear.  It is my -- I've been directly

25   informed by Target, by their personal counsel, that they

1    have consented to this settlement.  So, there is no issue

2    with Target not consenting or no issue with the insurance

3    carriers and Target in not consenting.  It has all been

4    agreed upon.  And that's the information that I have.  So,

5    whatever conjecture counsel for Pinnacle has, you know, is

6    just utter speculation and not what Target has represented

7    otherwise.

8           THE COURT:  All right.  Well, Mr. Meadows, I

9    assume, if we're going to hear from you, it's going to be in

10   writing on Friday.  It's going to have to be pretty good to

11   convince me, but I guess we'll just wait and see what you

12   file.

13          MR. MEADOWS:  We appreciate it, Your Honor.

14          THE COURT:  All right.

15          MR. NELSON:  Your Honor, this is Bluestone.  Dave

16   Nelson on behalf of Bluestone.  Our client is under

17   considerable strain at this time.  Much of it is set upon

18   the expectation that this matter would have been resolved,

19   and that's not anybody's problem but ours, but what I want

20   to ask the Court is with respect to -- to the extent it's

21   not already been conveyed to the Court and the parties, if

22   and when Pinnacle files something on Friday, if the Court is

23   going to be inclined for this matter to proceed to a hearing

24   before adjudication, we would like to have that as soon as

25   possible.  We have already asked for an expedited relief in

```
1    this matter and we will do anything we can to shorten the

2    time frame on formulating a response, if one is going to be

3    necessary, or participating in a hearing, if the Court

4    believes it's necessary.  We want to make sure the Court is

5    aware of that, but this matter is of an utmost priority to

6    our client, and we want to make sure the Court is aware of

7    that.

8              THE COURT:  All right.  Fair enough.  Well, let's

9    see what -- see what, if anything, gets filed on Friday and

10   we'll go from there.

11             MR. NELSON:  Thank you, Judge.

12             MR. MEADOWS:  Thank you, Your Honor.

13             THE COURT:  Anybody got anything else we can take

14   up today?

15             MR. NELSON:  No, sir.

16             MR. MEADOWS:  You don't want me talking anymore

17   today, do you, Judge?

18             THE COURT:  Ayme's shaking her head no.

19        All right.  Hearing none then, we'll see what comes on

20   Friday.  Thank you all very much.

21             MR. MEADOWS:  Thank you.

22             MR. POE:  Thank you.

23        (Proceedings concluded at 2:40 p.m., May 2, 2018.)

24

25
```

1    CERTIFICATION:

2         I, Ayme A. Cochran, Official Court Reporter, certify

3    that the foregoing is a correct transcript from the record

4    of proceedings in the matter of Bluestone Coal Corporation,

5    Plaintiffs v. Pinnacle Mining Company, LLC, Defendants,

6    Civil Action No. 2:16-cv-06098, as reported on May 2, 2018.

7

8    s/Ayme A. Cochran, RMR, CRR                    May 2, 2018

9    Ayme A. Cochran, RMR, CRR                      DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25