IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BLUESTONE COAL CORP., et al., Plaintiff,

v.

PINNACLE MINING CO., LLC, et al., Defendant.

Civil Action No. 2:16-cv-06098

Date: September 24, 2018

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:
(All telephonically)

For the Plaintiffs:

DAVID F. NELSON, ESQ.
R. SCOTT LONG, ESQ.
Hendrickson & Long
P. O. Box 11070
Charleston, WV 25339

For the Defendants:

JOSHUA A. BERMAN, ESQ.
White & Case
1221 Avenue of the Americas
New York, NY 10020-1095

JOHN JOSEPH MEADOWS, ESQ.
Steptoe & Johnson
P. O. Box 1588
Charleston, WV 25326-1588

DENNIS R. ROSE, ESQ.
Hahn Loeser & Parks
Suite 2800
200 Public Square
Cleveland, OH 44114

(Appearances continued)

THOMAS M. HANCOCK, ESQ.
DIANA LEIGH JOHNSON, ESQ.
Bowles Rice
P. O. Box 1386
Charleston, WV 25325-1386

JOHN L. MACCORKLE, ESQ.
MacCorkle Lavender
P. O. Box 3283
Charleston, WV 25332

GRANT H. HACKLEY, ESQ.
DOUGLAS C. LASOTA, ESQ.
Marshall Dennehey Warner Coleman & Goggin
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219

RONALD K. GORSICH, ESQ.
White & Case
Suite 2700
555 South Flower Street
Los Angeles, CA 90071

PHILIP JOHN SBROLLA, ESQ.
Cipriani & Werner
Suite 300
1144 Market Street
Wheeling, WV 26003

Court Reporter: Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography; transcript produced by computer.

PROCEEDINGS had before The Honorable Thomas E. Johnston, Chief Judge, United States District Court, Southern District of West Virginia, in Charleston, West Virginia, on September 24, 2018, at 2:00 p.m., as follows:

COURTROOM DEPUTY CLERK: Hi. It's Staci in Judge Johnston's chambers. Who do I have on the line for the plaintiff?

MR. NELSON: David Nelson and Scott Long.

COURTROOM DEPUTY CLERK: And how about for the defendants?

MR. ROSE: Dennis Rose for Cliffs.

MR. HANCOCK: Tom Hancock, also for Cliffs.

MR. MACCORKLE: John MacCorkle for Ken & Coy.

MS. JOHNSON: Diana Johnson for TAM International, Inc.

MR. MEADOWS: John Meadows for Seneca defendants and Pinnacle.

MR. SBROLLA: Phil Sbrolla on behalf of C&J defendants.

COURTROOM DEPUTY CLERK: Anyone else?

Hearing no one, I'll get the judge. Hold on just a moment.

(Pause)

UNIDENTIFIED SPEAKER: Did anyone identify Josh Berman on the phone? You might want to add that again,

John. I just heard it ding.

MR. BERMAN: Hi, folks. This is Josh Berman from White & Case. I apologize. I had difficulty dialing.

(Pause)

THE COURT: Good afternoon. This is Judge Johnston. This is a telephonic status conference in Bluestone v. Pinnacle, and others, civil action number 2:16-cv-06098.

I have in my chambers my law clerk, Lesley Shamblin; my courtroom deputy, Staci Wilson; and my court reporter, Ayme Cochran.

We are on the record. I will ask that you identify yourselves when you speak so that we can make a clear record.

And will counsel please note their appearances?

MR. NELSON: For the plaintiffs, David Nelson and Scott Long of the Law Firm of Hendrickson & Long.

MR. BERMAN: For defendants, Seneca and Pinnacle, this is Josh Berman from the Law Firm of White & Case. I believe my colleague, Ron Gorsich, is on the line, as well.

MR. ROSE: Dennis Rose for Cliffs.

MR. HANCOCK: Tom Hancock also with Cliffs.

MS. JOHNSON: Diana Johnson, TAM International, Inc.

MR. LASOTA: Doug LaSota, counsel for Pinnacle.

MR. MACCORKLE: John MacCorkle for Ken & Coy.

MR. MEADOWS: John Meadows for Seneca defendants and Pinnacle.

MR. SBROLLA: And Phil Sbrolla on behalf of C&J Energy.

MR. HACKLEY: Grant Hackley on behalf of Pinnacle.

THE COURT: All right. The conference today was set as a result of a motion filed by Bluestone. And so, I will hear from Bluestone first.

MR. NELSON: Yes, Your Honor. David Nelson. Your Honor, we had asked for this status conference out of some concern over experience with these types of case in general, and this case, in particular, over the fact that we had gotten unclear confirmation, and perhaps there was some differential between the order that Your Honor entered and what Your Honor had directed in the transcripts or at the last telephonic hearing about making sure that all insurance representatives would be in attendance at the October 2nd settlement conference and, also, our knowledge that, quite often, insurance matters, i. E., issues that are purely between the insurance carriers themselves and the insured, often cause substantive negotiations between the mitigating parties to be delayed and not go forward. We were concerned that if there was any assistance that might take place prior to the settlement conference in terms of ensuring that those

matters had been addressed and taken up with the carriers to ensure, one, their attendance; and, two, that they had among themselves been able to at least, if nothing else, identify issues or prioritize their coverages before we are all there before Your Honor on October 2nd. That would be of great assistance to ensuring that the settlement conference could proceed and actually accomplish something, as opposed to breakdown between discussions among and between insurance carriers.

There's been quite a bit of time. We were in communications with, in particular, Pinnacle's and Seneca's counsel back in June and July and we understand that energy was invested at that time to make some progress about coverages, about the depletion of self-insured retentions or deductibles, and then the communication with potential excess insurance carriers.

It's not our intent to -- to attempt to get into, you know, the parties' preparation or willingness on any settlement that might be discussed, but simply trying to figure out whether these carriers have worked out their priority, or at least are close to it, before requiring the Court to get involved. So, that was our concern.

THE COURT: All right. Fair enough. I -- I understand that. Let's get a report on where we stand on that. That was the subject of some discussion in our

earlier conference calls this summer. So, where do we stand on the coverages?

I'm sorry.

MR. NELSON: I apologize. That was all -- that was all that I had to say on that point, Your Honor. That's our concern about this conference.

THE COURT: I'm sorry. I had my mute button on. No, I -- I understand your concern. The various coverages were discussed, at least to some extent, in our conference calls earlier this summer. So, let's get a report on where that stands.

MR. BERMAN: Judge, this is -- it's Josh Berman from White & Case on behalf of Seneca and Pinnacle. I am happy to tell you which carriers have said what. The only thing I want to say is that, if Mr. Nelson is concerned about the insurance companies' willingness and ability to show up and put an offer on the table, or help the parties get somewhere in the settlement conference, then we are doubly concerned because, from the standpoint of Pinnacle, that's really the sole source of funds and, otherwise, we're out of business. So, our interest is in getting the carriers before Your Honor to the courtroom and participating in good faith.

I'm going to give you the list. AIG, these are -- these are Cliff insurers who are also insurers of Pinnacle,

and then there's some other insurers that we'll get to. AIG has confirmed that it will attend on behalf of both Pinnacle and Cliffs. AIG is not paying defense fees, but that's -- that's neither here nor there.

Chubb will be present, but Chubb has -- and I should mention that AIG has a -- you know, one of these ten-page reservation of rights in place. So, they're going to attend, but they've reserved all rights, obviously, as to liability under the policy and to say nothing about liability of the case of their insureds, namely, the defendants.

Ace and Chubb will be present. There's at least $25 million dollars of coverage there. Again, appearing on behalf of both Pinnacle and Cliffs, again, with a reservation of rights that is somewhere near the length of 1 a piece.

The next one in the stack, Judge, is really, frankly, a problem. Star Indemnity is an excess carrier with -- with another $25 million. For reasons we don't know, they have yet to provide -- actually, I think I saw communications from them earlier today. At least as of my preparations for this hearing this morning, we haven't gotten a full coverage position letter from Star, but they did tell us that they will be attending the settlement conference, but only on behalf of Cliffs. How the insurer can take that position is

absolutely a mystery to Pinnacle because Cliffs was the owner of Pinnacle at the time of the alleged borehole incident and Pinnacle and the subsidiary of Cliffs, therefore, may have been short. So, in fact, Cliffs is only in this case on -- really, on a veil-piercing theory. And so, we don't understand Star's position at all.

I also want to say, Judge, that if you hear some frustration in my voice about the reservation of rights and the difficulties we've had getting the carriers to the table, it is because we have been at this for something in the order of three or four months now and we are frustrated with the carriers' behavior. And there may come a time, and I would say that time would be October 3rd, when the Court expects us to be filing third-party complaints against some or all of the insurance carriers, which I expect the plaintiffs in this case, namely, Bluestone, wouldn't oppose but, of course, I will leave it to them to state their position.

Ace Westchester, another $25 million, again, has indicated that they'll be appearing on behalf only of Cliffs.

I also want to -- as I said, apparently Star's letter this morning said that they thought literally this morning that they will appeal on behalf of Pinnacle and Cliffs subject to the reservation of rights.

Ace, however, which is the next $25, is coming only on behalf of Cliffs. So, the mystery remains.

Ironshore, which is the next $25 million, is not showing up. They haven't confirmed to us that they'll be -- that they'll be coming to the conference before Your Honor and we sent them multiple correspondence on letterhead beginning on March -- in March of 2018 and continuing through August.

Let's see. The next is Excel, which is $15 million excess. We wrote to them on September 21st, which is Friday. That was the most recent administrative communication. And they haven't told us they're going to appear on behalf of Pinnacle. And they've not given us a formal coverage position letter.

And I will tell you, Judge, there are -- I have now become immersed in some of the West Virginia insurance statutes and, you know, it is my understanding, based also on conferring with various counsel in Charleston, that these carriers --

(Telephonic interruption)

MR. BERMAN: -- in a position definitively within 15 days. And so, we are at a loss as to why we are -- we still haven't heard clearly from the majority of the stack that I've just articulated. And so, the carriers I just went over, Judge Johnston, takes us to $175 million dollars.

I neglected to mention Argo, which is the last $25 million in the stack. Again, we sent them multiple correspondence and they simply haven't confirmed that they're going to attend.

So, the good news is, everyone up to the last -- other than Ironshore and Argo will be there. The bad news is that, at least Ace, which is $25 million, between $50 and $75, is there only on behalf of Cliffs.

There are a couple of other small insurance policies that -- for the entirety of the drilling company had these policies and they enured to the benefit of Pinnacle.

Arch is going to be there on behalf of Pinnacle. They've only got a million dollars left.

Zurich is going to be there. They've got a $5 million limit. And they'll be there on behalf of Pinnacle.

And Great West (phonetic) is going to be there on behalf of Pinnacle, although he we don't have a position letter.

Both options reserve their rights.

So, you know, from our standpoint, we have -- we share Mr. Nelson's frustration and concern, but we have moved heaven and earth to do everything we can, Judge, to have the carriers present and willing to participate in the settlement conference in good faith.

I don't think that the hearing today -- and I'm not

sure Mr. Nelson asked; in fact, I think he may have specifically not asked, but I can't comment on the insurers' willingness to enhance proceeds towards a settlement. We certainly -- from our standpoint, Pinnacle and Seneca, it is in our interest that they do, irrespective of liability because it would protect my client, but I think that really sums up where we are and gives you a lot of the flavor of the efforts we've taken and the static we've encountered in trying to get the full stack to the conference on the 2nd.

And I really do want to say to the Court that we are, to some extent, you know, may anticipate a third-party action against at least some of the insurers from my clients, or from Pinnacle, I should say.

I hope that answers your question, Judge, and -- or Mr. Nelson's questions. If there's anything else, I'm certainly happy to address it.

THE COURT: Well, let me just ask, just so I'm clear, it sounds to me like reservation of rights or not, all but two of the carriers with potential coverage here are planning on being there; is that correct?

MR. BERMAN: Let me just count them up to make sure that's right. All but -- yes. All but three are going to be there. A third will be there only on behalf of Cliffs, but not on behalf of Pinnacle. And the company I'm referring to now is Ace, Westchester Surplus, which covers

the $50 to $17 -- sorry, $50 to $75 million level stack. So, essentially, Your Honor, right, with one small caveat.

THE COURT: Okay. Well, I can't recall, and I don't have it in front of me right now. Have I ordered all insurance carriers with potential coverage in this case to be present by representatives in person? I know I ordered the company principals to be here, but have I ordered the insurance carriers with potential coverage to be here?

MR. BERMAN: I believe you did, Your Honor. The only -- and I -- this is Josh again. The way you just worded it, which is, "have I ordered the carriers of potential coverage to be present", I gathered you ordered carriers to be present with personal representatives. I don't remember if it was all carriers with potential coverage. Maybe someone else has the recollection.

MR. NELSON: Your Honor, David Nelson for the plaintiffs. You clearly verbally at, I believe, the July 27th conference that you conducted by phone directed that verbally to the parties in the manner that Mr. Berman just described. The Court's written order, I don't believe, mentioned insurance carriers specifically, but we were all present on the phone and that, frankly, was one of the reasons, as I mentioned earlier, that we had some concern about this being clarified a distance out from the actual settlement conference.

THE COURT: Well, I can certainly do an order clarifying that, and that would be much more problematic for next Tuesday if it wasn't for the fact that we're -- it appears we're only talking about two carriers out of the lengthy list that we heard there. That's -- if we were talking about most of the list, that might become a problem, but with two carriers being the only issue, I would have no problem with entering an order today clarifying that and requiring them to be here.

Is there any objection to that?

Hearing none --

MR. BERMAN: Your Honor --

THE COURT: Go ahead, whoever that was.

MR. BERMAN: No, it's Josh. Sorry. I forgot about Your Honor's protocol where you just stay silent.

THE COURT: Okay. All right. Well, I'm -- I'm going to take a look at my old orders, but my intention right now is, I'll put out an order today or tomorrow requiring all carriers with potential coverage to be present in person with representatives with full settlement authority.

All right. Mr. Nelson, does that allay some of your concerns?

MR. NELSON: Yes, Your Honor. I think that addresses just about everything. We had some questions

about the -- whether the carriers were taking unreasonable positions about exhaustion of retentions and such, but I don't think that matter is going to stumble things up to the extent that others would and, certainly, Mr. Berman's -- Mr. Berman and Cliffs, as well, I think, have a confluence of interest with the plaintiffs on that point and they'll be able to push through that on the morning of the conference if -- if they're not able to do so beforehand.

THE COURT: All right. Very well.

A couple other matters we need to discuss. One is that, again, I should have this in front of me, but I don't. What time is the conference scheduled to start? It's scheduled to start at 10:00? Hang on just a second. I need to ask my staff something.

(Pause)

THE COURT: Yes. So, we've got a lot going on here at the courthouse next Tuesday. The trial of Justice Loughry starts Tuesday and Judge Copenhaver ordered extra jurors, or potential jurors, to be brought in for jury selection that morning. And the Clerk's Office, in order to find a space big enough to process them, is going to be using my courtroom here on the seventh floor for that purpose. But they've told me that they will be done with the courtroom by 9:30.

So, just to let everybody know, you probably don't want

to come too early for our 10:00 proceeding because there will be probably a pretty big crowd up here on seven until around 9:30 a.m. I had thought originally, when I was corresponding, I was out of town late least week and corresponding with my staff about this, that maybe I had set this for 9:00 and that would present an issue, but we've got plenty of space here. I'm just trying to help Judge Copenhaver out with the proceeding he has -- he will have going on next week.

Let me see. There's a couple of other things I wanted to raise myself and then I'll give the parties an opportunity to raise anything else they might want to raise.

Oh, there's a motion to excuse the defendant from settlement conference as Docket 311 filed by TAM International. I'm a little perplexed by this one. It represents and, as far as I know, there's been no response to it, that plaintiffs have agreed to dismiss TAM International from the case, but have been unable to secure the agreement of the co-defendants. Where does that stand?

UNIDENTIFIED SPEAKER: Judge --

MS. JOHNSON: Your Honor, this is Diana Johnson. You are correct. And Dave will speak, and agree, I'm sure, that they've agreed to dismiss. And we've been trying to secure that dismissal for several months and all but one co-defendant has agreed to sign off on that, but Cliffs has

refused so far.

THE COURT: What's the reason for that?

MR. ROSE: Your Honor, Dennis Rose. One is, this request was right before the mediation. There's been not one e-mail, letter, or other request on this motion to dismiss that they are suggesting that. And so, we -- we agreed to it and, despite the fact there's been a number of hearings and/or depositions, that TAM has shown up.

And the bottom line is, they filed a cross-claim against Cliffs in this case for indemnity and, at least right now, we have an interrogatory answer from the plaintiffs saying that TAM was there and could have done something to advise this borehole not to be drilled in the way that it was negligently drilled. So, right now, the intent is to oppose the summary judgment and they should show up next week.

THE COURT: I'm having trouble following that response.

MR. ROSE: Well, the similar issue, Your Honor, is saying, "Let us out of the case" because no expert has identified them in an expert report. And that is not the way that you let somebody out.

One of the questions I think I have for Ms. Johnston [sic] is, would they be willing to allow the dismissal of the counterclaims and cross-claims from both parties without

prejudice so, if something happens in this case later down the road, both TAM and Cliffs could pursue whatever contribution or indemnity claims.

Ms. Johnston [sic], are you willing to do that?

THE COURT: Well, hang on a second. I'm in charge of this call, not you.

Ms. Johnson -- and, just so we're clear, her name is "Johnson" and my name is "Johnston". There's no relation.

Ms. Johnson, what's your position?

MS. JOHNSON: I think that's probably okay. I need to give that some thought but, I mean, I know TAM is definitely willing to dismiss their cross-claim, which was filed as part of their answer to reserve the rights under the Rules of Civil Procedure and we are willing to dismiss that.

THE COURT: Does that solve the problem?

MR. ROSE: And allowing the dismissal of Cliff'S claim being without prejudice, Your Honor?

THE COURT: Well, let me -- hang on a second. I'm a little slow. We're talking about TAM's cross-claims against Cliffs or Cliffs cross-claims against TAMS?

MR. ROSE: They want -- and, Your Honor, again, I apologize for the "Johnston" and the "Johnson". So, I'm sorry about that. But they want us to dismiss with prejudice the indemnity and contribution claims that we have

and these are claims that we have against -- Cliffs has against Pinnacle and other defendants, as well, but they weren't affirmatively alleged because cross-claims weren't filed. If they are willing to have us have a without-prejudice dismissal so that, in the future, we can go after TAM, if there's some reason, we are fine with that.

THE COURT: Ms. Johnson?

MS. JOHNSON: That will be okay.

THE COURT: Well, there we go.

MR. ROSE: Someone will prepare an order, Your Honor. I'll work with Ms. Johnson to figure out an order and we'll submit it.

THE COURT: Very well. Under the circumstances then, unless there's some other objection, I don't think it's necessary for TAM to participate on Tuesday.

MS. JOHNSON: Thank you, Your Honor.

THE COURT: You're welcome.

Anybody else have anything to raise?

MR. ROSE: Yes, Your Honor. Dennis Rose again. We had asked plaintiffs through discovery and follow-up to give us any first priority insurance that they have, you know, for the equipment that's involved in this case or any claims that they have filed on their own insurance carriers and any payments they've gotten on those claims. We believe all of that is discoverable for a number of reasons in this

case. And I'm still waiting for a response from plaintiffs. They haven't said yes or no on that. But since this is an insurance topic we're talking about today, we would like to have that information produced. We think it may be helpful for all the parties to have that in advance of October 3rd so that it may be useful information as we approach this settlement conference.

MR. NELSON: Your Honor, David Nelson on behalf of the plaintiffs. We have responded to the -- multiple defendants, in fact, I think, made the request about whether we received any payments. We have not received payments. There was a claim open with our carriers, and then, that claim was not pursued, and it has not -- it's not going forward as we speak.

I have requested the specific policy information from the client, from corporate counsel and, Your Honor, I followed up on it again last week. As soon as I get it, we have absolutely no problem with providing it to anyone. However, we do not understand how it's relevant to today.

We've received no payment and, further, it is clearly under the rules of collateral resource that it would not impact any aspect of the settlement proceedings. So, that's our position on it, but we have no objection to providing the deck sheets and policies that could have been implicated but, again, there have been no payments and the parties can

rely on that. We have already verified that.

THE COURT: Well --

MR. ROSE: Your Honor -- Your Honor, what we're looking for is the claim that was submitted and withdrawn. Obviously, we want the policies, as well, but the claim that's going to be relevant to what type of claim they've asserted to their own carriers and I think that could be relevant for a number of reasons in this case, nothing to do with collateral resources.

THE COURT: Well, I don't really -- other than the fact that you've attracted my attention to another pot of money here, I'm not really inclined to get into a discovery dispute hearing on this call. So, my -- but now that we've discussed it, it sounds to me like, potentially, there's another pot of money here, so the order that I entered might be broad enough to bring them in.

I mean, Mr. Nelson, why would you object to having another carrier here potentially to contribute to a settlement?

MR. NELSON: (Unintelligible).

THE COURT: Mr. Nelson, you're breaking up.

MR. NELSON: Yes. Yeah. And you were breaking up before. I did not hear what you said. Do you want us to dial back in?

THE COURT: No, no. You're better now. I don't

know what happened there. I was saying why --

MR. NELSON: (Unintelligible).

THE COURT: Can you hear me now?

MR. NELSON: Yes, and I'll be quiet.

THE COURT: Okay. I was just saying, why wouldn't you want another carrier here with another pot of money, even if it's your own carrier? I mean, why couldn't -- why shouldn't I write my order broadly enough to include them?

MR. NELSON: Your Honor, if you want our first priority carriers to come to the meeting, we'll do what we can to get them there, but these are carriers that we have not been pursuing any communications with for the past year and a half and I don't know what they would have to offer, but if Your Honor wants us to get them here, that's fine. I don't believe they're going to be providing any meaningful participation and they have not yet received any notice because they're not liability carriers.

And, frankly, I think it may create problems that -- and an entanglement that could slow things down rather than clear things up, but if Your Honor wants them there, we will -- we will comply.

THE COURT: What's the defendants' position on that?

MR. ROSE: Having -- (unintelligible) in the policies -- (unintelligible) -- other than, if it's someone

who potentially could have some liability as a carrier, then why shouldn't they be there like everyone else?

THE COURT: Who is that?

UNIDENTIFIED SPEAKER: Judge, for Pinnacle and Seneca --

THE COURT: Hang on. Hang on. Hang on. Hang on. Who was the first person that spoke there?

MR. ROSE: I'm sorry, Your Honor, that's Dennis Rose again for Cliffs.

THE COURT: All right. Make sure you identify yourselves when you speak.

Somebody else started.

MR. BERMAN: Your Honor, this is Josh Berman for Pinnacle and Seneca. We would certainly love to see the plaintiffs' carriers there for a number of reasons that I think -- and I'm hopeful, at least, that it could actually materially advance the Court's objectives.

THE COURT: Well, here's what I'm going to do. I'm going to word the order broadly, as I indicated earlier, to say that any carrier with potential coverage for this case should be present. I don't really -- this is the first I've kind of heard of first-party coverage for the plaintiffs, so I'm at -- I'm -- you all say you are at a loss about it. I'm certainly at a loss about it, but I'm going to word that broadly, and I think, when in doubt, the

carrier should probably be here.

MR. NELSON: Your Honor, again, we already said we don't have -- this is David Nelson. We have no objection. We may have -- we may get some blow-back from the people who are involved on short notice, but we certainly will press them to be here and let them know that there's a court order requiring them to be here.

The only thing I would add, so that it's of no surprise next week, is that normally any carriers who are first-party, who make payment and participate, are expecting a right of subrogation and that normally comes right back into their pocket. So, I don't know what assistance that could be to these defendants but, again, we'll comply with Your Honor's order.

THE COURT: Well, you all can think that through and, if the parties change their position with regard to your first-party carriers, you can let me know, but I'm -- I would rather -- in general, I would rather include more than fewer potential pockets.

MR. NELSON: Your Honor, just -- David Nelson again. Just to be clear, I think the Court and everyone understands, that we don't control them and we will let them know, but they have not been a party who has been on notice of this settlement conference or, for that matter, anything about this claim for a year and a half, but we'll let them

know.

THE COURT: Fair enough.

One other thing I thought of, and I meant to mention this earlier, is that it might be helpful for me to have a statement from each side with regard to the status of the litigation settlement negotiations, et cetera. I don't want you to write books, though, and I would prefer, where possible, that you provide -- like, on the defense side, if you can, provide joint statements, but I would suggest that -- you know, we're meeting on Tuesday, the 2nd. Perhaps by the end of this week, you could submit something no longer than, say, ten pages just to give me an orientation to the case and to the posture of the settlement discussions leading up to our meeting.

Is there any objection to that?

MR. NELSON: Your Honor, David Nelson on behalf of the plaintiffs. Our only question is, is that -- it's not an objection, but is that meant to be a confidential statement, or is this a shared -- a statement to be shared with all parties?

THE COURT: Well, if there's no objection, let's do it confidentially. I actually don't usually do this, so -- I know mediators do this a lot and I think they do it on a confidential basis. So, if there's no objection, why don't you submit them confidently to me. You can actually

submit them directly to Ms. Shamblin.

Is there any objection to that?

Hearing none, that's the way we will proceed.

Anybody else have anything they need to raise today in advance of next week's proceedings?

All right. Hearing none --

MR. GORSICH: Your Honor, Ron Gorsich with White & Case.

THE COURT: Yes.

MR. GORSICH: Because there's been confusion in the past, I just want to confirm that dispositive motions are due on October 1st, and that no party thinks otherwise.

THE COURT: Well, I'm not hearing anything, although it sounds to me like it doesn't make a whole lot of sense to file dispositive motions the day before we have this big settlement conference.

MR. GORSICH: Ron Gorsich again, Your Honor. We agree. We actually thought they were due three weeks later, but there was a dispute about that, as you're aware.

THE COURT: Right. Well, it doesn't make any sense to have you all filing that stuff the day before the settlement conference, so why don't we just say that, in the unlikely event that this case doesn't settle next week, that we will re-set the dispositive motion dates?

Is there any objection to that?

Hearing none, we'll proceed that way, and you won't have to prepare those motions in the meantime.

I am very serious. Mr. Nelson, at the very least, has been through this process with me before with a similar grouping of parties and I am very serious about getting this case settled next week. So, I look forward to seeing everyone also with a -- bringing a view to working in that direction.

Anything else we need to deal with today?

Hearing none, have a good day. I'll see you next week.

(Proceedings concluded at 2:40 p.m., September 24, 2018.)

CERTIFICATION:

I, Ayme A. Cochran, Official Court Reporter, certify that the foregoing is a correct transcript from the record of proceedings in the matter of Bluestone Coal Corp., et al., Plaintiffs v. Pinnacle Mining Co., LLC, et al., Defendants, Civil Action No. 2:16-cv-06098, as reported on September 24, 2018.

s/Ayme A. Cochran, RMR, CRR          October 1, 2018

Ayme A. Cochran, RMR, CRR          DATE