## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**BLUESTONE COAL CORP., et al.**

      **Plaintiffs,**

    **v.**                                **CIVIL ACTION NO. 2:16-CV-06098**
                                                  **(Hon. Thomas E. Johnston)**

**PINNACLE MINING CO., LLC, et al.,**

      **Defendants.**

---

**Memorandum of Law in Support of Motion for Expedited Relief and to Enforce Settlement as to Non-Debtor Defendant and Liability Insurance Carriers**

---

### SUMMARY OF RELIEF SOUGHT

Plaintiffs, Bluestone Coal Corporation and the Double Bonus Mining Company (hereinafter collectively referred to as "Bluestone"), by and through their counsel, R. Scott Long, David F. Nelson, and the law firm of Hendrickson & Long, PLLC, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, the express authority contained in the Court's October 3, 2018 order (ECF 341) and its subsequent Order (ECF 355), have filed a Motion to Modify the Court's Dismissal Order and to Enforce Settlement Agreement. Bluestone and further seeks emergency and/or expedited relief.

As to Cliffs Natural Resources, Inc. ("Cliffs") and the insurance carriers only, Plaintiffs wish to complete the settlement announced by the parties and insurance carriers to this Court on October 3, 2018.  Days after the settlement was announced, several of the defendants[1] filed bankruptcy petitions in the United States District Court for the Northern District of Alabama, triggering an Automatic Stay. After considerable delay, but by way of an Agreed Order, Plaintiffs obtained leave of the bankruptcy court to proceed, as of April 12, 2019, with the completion of the settlement not involving any performance by or assets of the Debtor Defendants.  Importantly, to the extent that the resolution of the third-party insurance payments may involve disputes between the insurance carriers and the debtors, jurisdiction over any such controversy has been ceded to this Court. *See* Exhibit 1.

One or more of the insurance carriers have advised Plaintiffs they are unwilling to proceed with the completion of the settlement either because: 1) they dispute the amounts owed in comparison to what was promised in open Court on October 3, 2018; 2) they insist on obtaining a release of claims for defense costs from the Debtor Defendants; or 3) they require a finding by this Court that any claims for defense costs were waived by the Debtor Defendants during the settlement process..  Plaintiffs simply wish to complete the settlement and to receive the $8.16 million expressly promised by the non-debtor defendant, Cliffs, and the insurance carriers.

Plaintiffs are entitled to emergency or expedited relief because: (1) the time period under the Court's most recent order for reopening the case and taking action expires as of April 23, 2019; (2)  the responding parties or insurers have been specifically aware of the facts and issues relating to this controversy for at least four (4) months and should require little time to respond;

---

[1] Seneca Coal Resources, LLC, Seneca North American Coal, LLC, and Pinnacle Mining Company, LLC, hereinafter referred to as the "Debtor Defendants."

(3) Plaintiffs have suffered the economic loss of more than $220,000.00[2] from the unavailability of the settlement funds and will suffer additional losses with the passage of additional time without any means of recovery under the law; and, (4) Plaintiffs have also been forced to incur more than $60,000 of legal costs associated with obtaining relief from the Alabama bankruptcy court. [3]

## Statement of the Case

1.      On October 2nd and 3rd of 2018, this Court convened a comprehensive court-supervised Settlement Conference.  By order of the Court pursuant to its authority under Rules 16 and 83 of the Federal Rules of Civil Procedure, as well as LR Civ P 16.4, the Settlement Conference required the attendance of persons with full and binding decision-making authority on behalf of all parties, which necessarily included the fully authorized representatives of defendants' actual or potential insurance carriers.  *See* ECF 331.  This order was entered on August 1, 2018, **more than two months** before the Settlement Conference date, providing all parties and insurance carriers with ample time to be prepared.

4.      On October 2, 2018, the parties and their insurance carriers attended the Settlement Conference in compliance with the Court's order. In addition to counsel of record, the following counsel, insurance representatives, and party representatives relevant to this Motion attended: 1) Brent Mickum, General Counsel for Mission Coal, and Gary Broadbent, General Counsel, VP of Human Resources, and Secretary for Mission Coal, which owned Pinnacle Mining Company, LLC ("Pinnacle") and Seneca Coal Resources, LLC ("Seneca")), along with Mission Coal CEO Mike

---

[2] This figure is based on 6 months of simple interest at 5.5%, which is the statutory pre-judgment interest rate in West Virginia is 2019.

[3] The losses associated with further deprivation of the settlement funds rest solely on Plaintiffs and directly benefit the Respondents. Other than by means of expedited relief, there is no legal vehicle for recovering these losses from Cliffs or the insurance carriers.

Zervos;  2) Lou Bové, counsel for Zurich Insurance[4]; Charles Hafner, counsel for Arch Insurance[5]; Louis Long, counsel for Great Midwest Insurance Company[6]; Michael Didonato, adjuster for National Union Fire Insurance Company ("AIG") assigned to Pinnacle; Erin Ricu-Sicart, adjuster for AIG assigned to Cliffs[7]; and Dan Worker, adjuster for the Chubb insurance interests.[8]  The transcript of proceedings reflecting attendance of counsel, representatives, and insurance representatives and/or counsel, along with the opening of discussions, is attached as Exhibit 2.

4.       Extensive settlement discussions ensued between the parties, insurance carriers and the Court ensued and, on October 3, 2018, with the substantial assistance of the Court, the parties reached a binding settlement agreement that was placed on the record in open court.  The terms of the settlement agreement included the promise by Cliffs, in combination with insurers AIG, Chubb, Zurich, Arch and Great Midwest, to pay a combined $8.16 million to Plaintiffs, which payment was to have occurred within 30 days of the execution of a release.[9]  It also included Pinnacle's agreement  to pay an additional $4 million to Plaintiffs in three installments.  The $4 million that Pinnacle promised to pay was guaranteed by Seneca.  In addition, Pinnacle/Seneca agreed to immediately transfer to Bluestone all leasehold or real property interests (and permits) that they or their affiliated companies had in the Pocahontas 4 coal seam located within the former U.S. Steel properties in McDowell and Wyoming Counties, West Virginia.

---

[4] Zurich Insurance issued a excess insurance policy to its Named Insured, Target Drilling, Inc., ("Target") and included Pinnacle as an additional insured.

[5] Arch Insurance issued a commercial general liability policy to its Named Insured, Target and included Pinnacle as an additional insured.

[6] Great Midwest issued a commercial general liability policy to its Named Insured, Target and included Pinnacle as an additional insured.

[7] AIG issued a commercial general liability insurance policy with an indemnity limit of $3 million to Cliffs, under which Pinnacle was an additional insured.

[8] Chubb issued an Umbrella or excess insurance policy with a $25 million indemnity limit to Cliffs, under which Pinnacle was an additional insured.

[9] Given the passage of more than 6 months from the settlement date, equity demands that time to complete payment should now be reduced to 10 business days.

5.     During the settlement discussions, upon information and belief, Pinnacle's principals and counsel agreed to waive claims for legal costs and expenses from AIG, Arch and Great Midwest in exchange for the use of those insurance monies to fund the global settlement.  In reliance on those representations, AIG, Arch and Great Midwest advised the Court of specific settlement amounts that could be included in the global settlement offers.  Ultimately, the amounts offered by the insurance carriers and disclosed to Plaintiffs by the Court, were $2.9 million (AIG), $250,000.00 (Arch), and $10,000.00 (Great Midwest). Plaintiffs ultimately accepted these offers as part of a global settlement.

6.     In exchange for this consideration, Bluestone was to provide  a full and final release of Plaintiffs' claims in this civil action.  All of the essential terms and conditions comprising the settlement were placed on the Court record created the afternoon of October 3, 2018.   The Transcript of the proceedings is attached as Exhibit 3.

7.     Before the settlement process could be completed, however, the Debtor Defendants filed petitions for Chapter 11 Bankruptcy relief in the United States Bankruptcy Court for the Northern District of Alabama ("Bankruptcy Court"), with the lead action bearing Case No. 18-04177-TOM11 (hereinafter referred to as the "Mission Coal Bankruptcy").

8.     As a result of the Mission Coal Bankruptcy and concerns about the potential impact of the Automatic Stay provisions on the settlement process, Plaintiffs sought and obtained relief from Automatic Stay, effective as of April 12, 2019, for the purpose of completing those aspects of the settlement process that will not require any additional performance by the Debtor Defendants.  The extended bankruptcy negotiation process required Plaintiffs to seek relief from this Court extending the deadline to reopen the case from January 3, 2019, to April 23, 2019. (ECF No. 355). During the process of seeking the relief, however, Plaintiffs learned that Debtor

Defendants' bankruptcy counsel were taking the position that the Debtor Defendants *had not* waived their right to seek defense costs from the AIG policy and, potentially, the Arch and Great Midwest policies.[10]  Because the Debtor Defendants' position could materially impact the amount of insurance money available for the settlement, the order issued by the Bankruptcy Court further conferred jurisdiction of the controversy to this Court.  Specifically, the relevant portion of the order states:

> 5.      As of the Effective Date, the United States District Court for the Southern District of West Virginia shall have exclusive jurisdiction to resolve all issues related to the settlement agreement except for any claim directly against the Debtors arising from the settlement agreement and any claims by the Debtors against any insurer that do not erode or reduce the Movants' right to recover $8,160,000.00 under the Settlement Agreement from non-Debtor parties and insurers.

*See*, BR Document 920, attached as Exhibit 1.  Although stated in a negative fashion, the order plainly acknowledges this Court's exclusive jurisdiction to resolve all issues that may impact Plaintiffs ability to recover the full $8.16 million promised by Cliffs or the insurers, which necessarily includes the defense cost waiver issue.

9.      In sum, the Bankruptcy Court and the parties have agreed that this Court is the proper forum for resolving any dispute regarding the facts and circumstances of the settlement to the extent that they relate to the completion of the settlement by non-debtor parties or insurance carriers.

---

[10] Although Pinnacle also has asserted legal defense cost claims against Zurich, Zurich has conceded that no there was no agreement to waive such claims as part of the settlement, although it disputes that any such costs are owed. Importantly, Zurich is willing to complete the settlement with the Plaintiffs without resolving any defense cost issues.

## DISCUSSION AND AUTHORITIES

10.     Rule 60(b)(6) of the Federal Rules of Civil Procedure expressly provides, in pertinent part, that "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for …. (6) any other reason that justifies relief."   Moreover, this Court's Order provides a party with the opportunity to reopen the case "for good cause shown."  *See* ECF 341, and ECF 355 (extending time for such motion to be filed).

11.     Plaintiffs have provided the non-debtor Defendant (Cliffs) and the various insurance obligated insurance carriers with repeated notice of Plaintiffs intention to proceed with the completion of the settlement and have acknowledged that this process cannot require *further* performance by the Debtor Defendants.[11]  In exchange for the receipt of the committed insurance carrier proceeds and Cliffs payment of $8.16 million, Bluestone will provide an executed full and final release of all claims.  Plaintiffs shall not release the Debtor Defendants, however, from their separate and/or distinct obligation to perform regarding the payment of the $4 million or the transfer of the coal seam interests, as those matters remain within the jurisdiction of the Bankruptcy Court.

12.     Plaintiffs have been advised that one or more of the insurance carriers will not perform in compliance with their payment obligations, either because of a dispute about the amounts to be paid, or because they insist upon either a finding by this Court that Pinnacle expressly waived any potential claim for defense costs in exchange for the insurance carriers' agreement to fund the settlement.  Plaintiffs' agree that the insurers should receive such relief from the Court but deny that this issue should delay performance and payment under the terms of the settlement agreement.

---

[11] If the Court deems necessary, Plaintiffs do intend to enforce *any pre-petition waiver* of any such potential claims so that the settlement can be completed.

13.     This Court has the jurisdiction and authority to enforce settlement agreements in matters before it.  In reviewing a matter before  the U.S. District Court for the Northern District of West Virginia, Judge Broadwater held that "[a] strong policy of the Fourth Circuit is to foster settlement in order to advantage the parties and to conserve scarce judicial resources. *Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177 (4th Cir.1993). Once a settlement agreement is reached, a district court judge possesses 'the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing.' *Petty v. The Timken Corp.,* 849 F.2d 130, 132 (4th Cir.1988); *Young v. F.D.I.C.,* 103 F.3d 1180, 1194 (4th Cir.1997); *Millner v. Norfolk & W.R. Co.,* 643 F.2d 1005, 1009 (4th Cir.1981)."[12] *U.S. ex. Rel. McDermitt, Inc., v. Centrex Simpson Constr. Co., Inc.*, F.Supp.2d 397 (1999).  Like the matter before Judge Broadwater, this Court clearly has retained jurisdiction over this case and preserved  the rights of the parties to pursue relief before it so long the sought relief sought is timelyy.  Plaintiffs have complied with this requirement.

14.     Plaintiffs are not seeking an unfair advantage over Cliffs or the insurance carriers by pursuing the relief requested herein.  Plaintiffs only seek to recover the amounts promised to them by Cliffs and the liability insurance carriers under the express terms of a settlement placed on the record in open court.  While the defense cost  waiver issue falls within the jurisdiction of this Court, to the extent that Plaintiffs or any other insurance carrier might seek payment or performance from any Debtor Defendant, such relief remains before the Bankruptcy Court,

---

[12] The Fourth Circuit stands in line with the majority of the other circuits. *See, e.g., Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir.1995) (stating that circuits have uniformly stated that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it) (citations omitted); *Vari–O–Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp.,* 629 F..Supp. 257, 258 (S.D.N.Y.1986) (stating that a court has the inherent power, and *indeed the duty,* to enforce a settlement in a case pending before it) (*emphasis added*).  *Id.* at fn. 3.

which retains jurisdiction over those matters.   To put it more simply, Plaintiffs' ability to recover $4 million in settlement monies and the completion of a coal seam lease transfer have been impaired or complicated by the Mission Coal Bankruptcy.  The Mission Coal Bankruptcy does not void the settlement agreement or render the essential obligations of the parties or third-party insurance carriers unenforceable. Instead, the Mission Coal Bankruptcy merely prevents the parties from seeking to collect monies from the Debtor's estate or to seek further performance by the Debtor Defendants. The relief sought by Plaintiffs in this motion requires neither payment nor performance by any Debtor Defendant.  The insurance indemnity payments promised at the October 3, 2018, settlement conference do not involve Debtor funds, but rather involve monies held by Cliffs and insurance carriers.[13]  These actors should be compelled to comply with their payment obligations under the settlement terms existing as between the non-Debtor parties.

15.    Finally, but importantly, Plaintiffs have been advised by AIG that, notwithstanding the representations made by its authorized representatives to the Court and to the Plaintiffs, which representations were placed on the court record, AIG is contesting its obligation to contribute $2.9 million to the settlement.  AIG claims it only owes $2,192,297.13.  In taking this position, AIG claims that the indemnity limits under its $3 million policy were eroded by other payments by more than the approximately $100,000.00 amount reduced from the policy limits  during the settlement discussions and hides behind the claim that payments were handled by a third-party administrator (TPA).  AIG complains that it was "unable to confirm" the amount remaining under

---

[13] The relief sought in this motion is no different than the post-petition settlement completed by a decedent's estate in a wrongful death claim still pending before the Honorable Irene Berger.  *See Rosser et al. v. Pinnacle Mining Company, LLC et al.* Civil Action No. 5:18-cv-00349.  In that matter, Mission Coal subsidiaries, including Pinnacle, completed an insurance funded settlement without even seeking relief from the stay from the Bankruptcy Court.

the policy at the time of the settlement conference.  Absent from the court record is any representation that remaining policy limit would be materially less than the $2.9 million offered to Plaintiffs through the Court in settlement discussions or disclosed on the record.[14]  Moreover, given the fact that AIG had more than *two months'* notice to prepare for the settlement conference, the claim that it was "unable to confirm" the proper balance from the TPA is indefensible.  The mere suggestion that the conveyed offer was off by more than $700,000.00 is patently absurd.[15]

16.      Finally, as noted in controlling law from the Fourth Circuit, the relief sought by Plaintiffs does not require the Court to conduct a hearing; rather, the Court may issue an order enforcing the matter based on the existing record.  As the Fourth Circuit explained, a district court judge possesses "the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing.' *Petty, supra, v. The Timken Corp.,* 849 F.2d 130, 132 (4th Cir.1988); *Young v. F.D.I.C.,* 103 F.3d 1180, 1194 (4th Cir.1997); *Millner v. Norfolk & W.R. Co.,* 643 F.2d 1005, 1009 (4th Cir.1981).  Regarding the terms of the agreement, precedent in this Circuit provides that "in order to enforce a settlement agreement, a district court (1) must find that the parties reached a complete settlement agreement and (2) must discern the terms of that agreement. *Id.* at 540–41; *Moore v. Beaufort County,* 936 F.2d 159, 162

---

[14] Defense counsel specifically represented that "AIG will be making a payment of approximately $2.9 million -- I think it's $2.9 -- well, I don't have the number in front of me, which is the balance of its policy."  *See* Exhibit 3, at p. 5.  Thereafter, the Court gave the assembled parties, counsel and insurers an opportunity to correct anything that had been put into the record: "All right. Anybody else here have anything to --anything to add or contradict what the parties have already indicated under the settlement? Everybody is on the same page? If not, speak now, or forever hold your peace subject, of course, to preparation of documents. All right. Very well." *Id.* at p. 8.

[15] Upon information and belief, the amounts paid under the policy would have been distributed to Cliffs' designated defense firm, Hahn & Loeser, PLLC.  It is inconceivable that the collective Cliffs representatives, in-house attorneys, and the outside counsel would not have appreciated the existence of $800,000 in legal billings omitted from the announced $2.9 million amount available from a $3 million policy, specifically described on the record, might be in error.  Certainly, the Plaintiffs had no way of knowing the details behind the $2.9 million offer communicated to the Court and subsequently extended to them.

(4th Cir.1991). <u>Schott Corp. v. Am. Ins. Co.</u>, No. CIV A 604-0191, 2006 WL 2988460, at *2 (S.D.W. Va. Oct. 17, 2006).

17.     In this case, Cliffs and the insurance carriers reached agreements with the Plaintiffs.  In exchange for Plaintiffs' agreement to release all their claims and causes of action, Cliffs and the insurers agreed to contribute the funds specified on the record.  As to the non-Debtor parties and carriers, these settlement terms can be enforced without further hearing or proceeding.

18.     Although the insurers have indicated that they need this Court make a finding that the Debtor Defendants waived their alleged defense cost claims, Plaintiffs were strangers to such agreements and should not be prejudiced by any delays related to their resolution.  Further delay of the completion of the settlement with the Plaintiffs is both unnecessary and unjust. Cliffs and the insurers should be compelled to complete the settlement and pay, in full, the promised amounts.

**CONCLUSION**

Plaintiffs are entitled to the benefit of the settlement reached on October 3, 2018. This is the second time that actions by the Debtor Defendants have caused a good faith settlement to be frustrated and unnecessarily delayed.[16]  This Court has the express authority under the law and in conjunction with the authority ceded by the Alabama bankruptcy court to resolve all issues necessary to enforce the settlement as to Cliffs and the insurance carriers.  This includes the

---

[16] The Court may recall that the Debtor Defendants objected to Plaintiffs' settlement with the defendant Target Drilling, Inc., alleging that the $5 million settlement was insufficient and could have been the result of fraud or collusion.  The dubious nature of the Debtor Defendants conduct in the case was further highlighted by their demand that the Double-Bonus mine be dewatered, accompanied by disingenuous "offer" to fund the costs of the project, which "offer" was made at the same time the Debtor Defendants were retaining counsel for bankruptcy reorganization.  The history of frivolous and/or misleading conduct by the Debtor Defendants before this Court should no longer frustrate the resolution of this case.

authority to grant Plaintiffs emergency and/or expedited relief by way of an order requiring Cliffs and the insurers to perform under the terms offered, accepted and placed on the record. If the insurance carriers insist on a finding on the defense cost waiver issue, that issue can be resolved subsequently by the concerned and affected parties and does not require Plaintiffs' continued involvement.  In sum, the Court can enforce Plaintiffs' rights relating to matters already placed on the record. However, if the Court is inclined to require a hearing, time is of the essence and an emergency or expedited hearing is needed to avoid further irreconcilable prejudice to Plaintiffs.

**BLUESTONE COAL CORPORATION and DOUBLE-BONUS MINING COMPANY,**

**By Counsel**

*/s/ David F. Nelson*          *4/12/2019*
R. Scott Long, Esquire (#2238
David F. Nelson, Esquire (#5754)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (facsimile)
scott@handl.com
dnelson@handl.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**BLUESTONE COAL CORP., et al.**

        **Plaintiffs,**

     **v.**                                   **CIVIL ACTION NO. 2:16-CV-06098
                                            (Hon. Thomas E. Johnston)**

**PINNACLE MINING CO., LLC, et al.,**

        **Defendants.**

## CERTIFICATE OF SERVICE

I, David F. Nelson, counsel for plaintiffs, do hereby certify that on the **12th day of April 2019**, I served true and exact copies of the Plaintiffs' **Motion** and **Memorandum of Law in Support of Motion for Expedited Relief and to Enforce Settlement as to Non-Debtor Defendant and Liability Insurance Carriers** upon counsel of record using the Court's CM/ECF system, which will deliver electronic copies to counsel listed below, and by electronic mail to all known Insurance and Debtor counsel, as follows:

| | |
|---|---|
| John J. Meadows, Esquire | Craig H. Averch, Esquire |
| Peter J. Raupp, Esquire | Ronald K. Gorsich, Esquire |
| Devon J. Stewart, Esquire | Mark E. Gustafson, Esquire |
| **STEPTOE & JOHNSON, PLLC** | **WHITE & CASE LLP** |
| P.O. Box 1588 | Suite 27000 / 555 South Flower Street |
| Charleston, West Virginia 25316-1588 | Los Angeles, California 90071 |
| john.meadows@steptoe-johnson.com | caverch@whitecase.com |
| peter.raupp@steptoe-johnson.com | rgorsich@whitecase.com |
| devon.stewart@steptoe-johnson.com | mgustafson@whitecase.com |
| *Counsel for Defendants* | *Counsel for Defendants* |
| *Pinnacle Mining Company, LLC;* | *Pinnacle Mining Company, LLC;* |
| *Seneca Coal Resources, LLC; and* | *Seneca Coal Resources, LLC; and* |
| *Seneca North American Coal, LLC* | *Seneca North American Coal, LLC* |

Joshua A. Berman, Esquire
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
joshua.berman@whitecase.com
*Counsel for Defendants Pinnacle Mining*
*Company, LLC; Seneca Coal Resources, LLC; and*
*Seneca North American Coal, LLC*

Marc E. Williams, Esquire
**NELSON MULLINS**
  **RILEY & SCARBOROUGH**
Suite 200 / 949 Third Avenue
Huntington, West Virginia 25701
marc.williams@nelsonmullins.com
*Counsel for Cliffs Natural Resources*

Diana Leigh Johnson, Esquire
Stuart A. McMillan, Esquire
Andrew C. Robey, Esquire
**BOWLES RICE, LLP**
600 Quarrier Street
Charleston, West Virginia 25301
djohnson@bowlesrice.com
arobey@bowlesrice.com
smcmillan@bowlesrice.com
*Counsel for TAM International, Inc.*

Douglas Lasota, Esquire
Grant Hackley, Esquire
**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
501 Grant Street, Suite 700
Pittsburgh, Pennsylvania 15219
DCLasota@MDWCG.com
*Co-Counsel for Pinnacle Mining, LLC*

E. Sean Medina, Esquire
Robert J. Fogarty, Esquire
**HAHN LOESER & PARKS LLP**
Suite 2800 / 200 Public Square
Cleveland, Ohio  44114
smedina@hahnlaw.com
rjfogarty@hahnlaw.com
*Counsel for Cliffs Natural Resources, Inc.*

Muphy S. Klasing, Esquire
**WEYCER, KAPLAN,**
  **PULASKI & ZUBER, P.C.**
Suite 1400 / 11 Greenway Plaza
Houston, Texas 77046
mklasing@wkpz.com
*Counsel for TAM International, Inc.*

John L. MacCorkle, Esquire
Michael E. Mullins, Esquire
**MACCORKLE LAVENDER PLLC**
Post Office Box 3282
Charleston, West Virginia 25332-3283
jmaccorkle@mlclaw.com
*Counsel for Ken & Coy Rock Company*

14

By Email Only to:

Melissa N. Koss
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL
LLP
300 North LaSalle
Chicago, Illinois 60654
Melissa.koss@kirkland.com
*Counsel for Debtor Defendants*

Louis Bove, Esquire
Bodell Bove, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
LBove@bodellbove.com
*Counsel for Zurich Insurance*

Charles A. Hafner, Esquire
Nicolaides, Fink, Thorpe, Michaelides,
Sullivan, LLP
10 S. Wacker, 21st Floor
Chicago, Illinois 60606
chafner@nicolaidesllp.com
*Counsel for Arch Insurance*

Louis C. Long, Esquire
Thomas, Thomas & Hafer, LLP
525 William Penn Place
37th Floor, Suite 3750
Pittsburgh, PA  15219
llong@tthlaw.com
*Counsel for Great Midwest*

Colleen P. Sorenson, Esquire
Hinkhouse, Williams Walsh, LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
csorenson@hww-law.com
*Counsel for AIG*

*/s/ David F. Nelson             4/12/2019*
R. Scott Long, Esquire (#2238)
David F. Nelson, Esquire (#5754)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500; (304) 346-5515 (fax)
scott@handl.com
dnelson@handl.com