IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

```
----------------------------------x
                                  :
BLUESTONE COAL CORP., et al.,     :
                                  :
                Plaintiffs,       :
                                  :   Civil Action
v.                                :   No. 2:16-cv-06098
                                  :
PINNACLE MINING CO., LLC, et al., :
                                  :
                Defendants.       :
                                  :
----------------------------------x
```

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE HELD

BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE

THURSDAY, APRIL 25, 2019, 2:00 P.M.

---o0o---

APPEARANCES:
(All telephonically)


For the Plaintiffs:      DAVID F. NELSON, ESQ.
                         R. SCOTT LONG, ESQ.
                         Hendrickson & Long
                         Post Office Box 11070
                         Charleston, West Virginia  25339


            (Appearances continued next page...)



Reported by:       KATHY L. SWINHART, CSR
                   Official Court Reporter
                   (304) 528-2244

Proceedings reported by mechanical stenography,
transcript produced by computer-aided transcription.

```
 1                      APPEARANCES (Continued)

 2      For the Defendants:

 3                    DOUGLAS C. LA SOTA, ESQ.
                      Marshall Dennehey Warner Coleman & Goggin
 4                    501 Grant Street, Suite 700
                      Pittsburgh, Pennsylvania  15219
 5

 6                    DENNIS R. ROSE, ESQ.
                      Hahn Loeser & Parks
 7                    200 Public Square, Suite 2800
                      Cleveland, Ohio  44114
 8

 9                    JOHN L. MAC CORKLE, ESQ.
                      MacCorkle Lavender
10                    Post Office Box 3283
                      Charleston, West Virginia  25332
11

12                    MARC E. WILLIAMS, ESQ.
                      Nelson Mullins Riley & Scarborough
13                    Post Office Box 1856
                      Huntington, West Virginia  25719
14

15                    LOUIS A. BOVE, ESQ.
                      Bodell Bove
16                    1845 Walnut Street, Suite 1100
                      Philadelphia, Pennsylvania  19103
17

18                    CHARLES A. HAFNER, ESQ.
                      CODY S. MOON, ESQ.
19                    Nicolaides Fink Thorpe Michaelides Sullivan
                      10 South Wacker Drive, Floor 21
20                    Chicago, Illinois  60606

21
                      LOUIS C. LONG, ESQ.
22                    Thomas Thomas & Hafer
                      525 William Penn Place, Suite 3750
23                    Pittsburgh, Pennsylvania  15219

24
                      (Appearances continued next page...)
25
```

1                        APPEARANCES (Continued)

2        For the Intervenor:

3                          ROBERT J. D'ANNIBALLE, JR., ESQ.
                           Pietragallo Gordon Alfano Bosick & Raspanti
4                          3173 Main Street
                           Weirton, West Virginia  26062
5

6                          COLLEEN P. SORENSON, ESQ.
                           Hinkhouse Williams Walsh
7                          180 North Stetson Avenue, Suite 3400
                           Chicago, Illinois  60601
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1     PROCEEDINGS had before The Honorable Thomas E.

2   Johnston, Chief Judge, United States District Court, Southern

3   District of West Virginia, in Charleston, West Virginia, on

4   Thursday, April 25, 2019, at 1:58 p.m., as follows:

5     COURTROOM DEPUTY CLERK:  Hi, this is Staci in Judge

6   Johnston's chambers.  Who do I have on the line for the

7   plaintiff?

8     MR. S. LONG:  Scott Long and Dave Nelson.

9     COURTROOM DEPUTY CLERK:  And how about for the

10  defendants?

11    MR. HAFNER:  Charles Hafner for Arch Insurance

12  Company, but we are not a defendant.

13    MS. SORENSEN:  Colleen Sorensen here for National

14  Union AIG.

15    MR. ROSE:  Dennis Rose for Cleveland Cliffs.

16    MR. D'ANNIBALLE:  Rob D'Anniballe for National Union

17  AIG.

18    MR. MOON:  Cody Moon for Arch Insurance.

19    MR. L. LONG:  Louis Long for Great Midwest Insurance.

20    (Pause)

21    COURTROOM DEPUTY CLERK:  Hi, it's Staci in Judge

22  Johnston's chambers.  Who do I have on the line?

23    MR. BOVE:  This is Lou Bove for Zurich, or it is

24  actually American Guarantee and Liability Insurance Company.

25    MR. MAC CORKLE:  John MacCorkle for Ken & Coy.

2

```
1          COURTROOM DEPUTY CLERK:  Hello?

2          MR. WILLIAMS:  This is Marc Williams.

3          MR. ROSE:  You also have Dennis Rose for Cleveland

4    Cliffs.

5          MR. L. LONG:  Louis Long for Great Midwest.

6          COURTROOM DEPUTY CLERK:  Kathy, are you on the line?

7          COURT REPORTER:  Yes, I am, Staci.

8          COURTROOM DEPUTY CLERK:  Okay.  Great.

9          If you all hold on just a moment, I will get the

10   judge.  Thank you so much.

11       (Pause)

12         THE COURT:  Good afternoon.  This is Judge Johnston.

13   This is a telephonic status conference in Bluestone versus

14   Pinnacle, civil action No. 2:16-cv-06098.

15         I have in my chambers my law clerk, Lesley Shamblin;

16   my courtroom deputy, Staci Wilson; on the phone, I have court

17   reporter Kathy Swinhart, who is appearing by phone in

18   Huntington.

19         I'm going to start out by asking Bluestone's counsel

20   to note their appearance.

21         MR. S. LONG:  Your Honor, this is Scott Long for

22   Bluestone.

23         MR. NELSON:  And David Nelson for Bluestone.

24         THE COURT:  All right.  Next, I'll ask Cliffs to make

25   their appearance.
```

3

1        MR. ROSE:  Your Honor, Dennis Rose for Cleveland

2   Cliffs.

3        MR. WILLIAMS:  And this is Marc Williams for Cleveland

4   Cliffs.

5        THE COURT:  All right.  Is there anybody on here for

6   Pinnacle?

7        MR. LASOTA:  Doug LaSota.

8        THE COURT:  I'm sorry.  I heard something, but I

9   didn't hear -- please repeat.

10       MR. LASOTA:  Doug Lasota.

11       THE COURT:  For Pinnacle.  All right.  Very well.

12       All right.  Let's move on to the insurance carriers.

13       Who is on the line -- let's try to have an orderly

14   progression here.  But for the insurance companies that are on

15   the line, please note your appearances.

16       MS. SORENSEN:  Colleen Sorensen for National Union or

17   AIG.  I believe Robert is here as well.

18       MR. D'ANNIBALLE:  Yeah, Robert D'Anniballe, Your

19   Honor, for National Union AIG as well.

20       MR. HAFNER:  Your Honor, Charles -- I'm sorry.

21       MR. BOVE:  Lou Bove for American Guarantee and

22   Liability Insurance Company, sometimes referred to in the

23   papers as Zurich.

24       MR. HAFNER:  And then for Arch Insurance Company,

25   Charles Hafner, and my partner Cody Moon is also on the line.

4

1        MR. L. LONG:  This is Louis Long, Your Honor, for

2    Great Midwest.

3        THE COURT:  All right.  Anybody else on the line want

4    to note an appearance?

5        MR. MAC CORKLE:  This is John MacCorkle for Ken & Coy.

6        Your Honor, I was not really sure whether I needed to

7    be a part of this or not.  I think we were dismissed from the

8    case and were not participating in the settlement, but I

9    obviously wanted to see whether the Court wanted our

10   participation at this point.

11       THE COURT:  Well, without objection, I don't think you

12   need to be involved in this.

13       MR. MAC CORKLE:  Okay.  Thank you very much.  I

14   appreciate it.

15       THE COURT:  Hearing none, you're dismissed.

16       MR. MAC CORKLE:  Thank you.

17       THE COURT:  You're welcome.

18       Mr. Nelson or Mr. Long, is there anybody else on the

19   call who either was not a part of the settlement or has

20   already paid and fulfilled their obligations under the

21   agreement?

22       MR. NELSON:  There is nobody who is -- Target Drilling

23   was dismissed last year, Your Honor.  But the parties who are

24   on the phone are everyone that is involved with the one

25   exception of Chubb.  We do not have -- that is Chubb ACE.  We

1      don't have their contact information.  We had requested it a

2      couple of times from their insureds.

3              They are the excess carrier that had committed three

4      million to this settlement.  We do not believe that they have

5      indicated any reservation on completing it, but candidly we

6      haven't heard either way from them.  But they insure as an

7      excess insurance carrier both Cliffs and ostensibly Pinnacle.

8              THE COURT:  All right.

9              MR. BOVE:  Your Honor?  I'm sorry, Your Honor.  This

10     is Lou Bove for American Guarantee or Zurich.

11             The only comment I would have on the participants in

12     the call is that Douglas Lasota, who noticed himself for

13     Pinnacle, he was retained by Zurich as Pinnacle's counsel

14     under reservation.  But I would have expected frankly that

15     somebody representing Pinnacle's interests outside of an

16     insurer appointed counsel would be on the call.

17             Pinnacle, of course, is a debtor in the Alabama

18     bankruptcy proceeding but nonetheless may have some interest

19     in this.  It's unclear to me at this point whether Pinnacle,

20     as a debtor, is pursuing any claim against any insurer or has

21     anything to say about any insurer's contribution to this

22     settlement, but I just wanted to note that for the record.

23     They're not on the call as best I can tell.

24             MR. HAFNER:  And if I may quickly follow up on

25     Mr. Bove's comments.  Your Honor, this is Charles Hafner for

6

1    Arch Insurance Company.

2           Several of the issues relative to Arch's ability and

3    willingness to move forward with the settlement do relate to

4    positions that Pinnacle may or may not be taking, and I don't

5    think Mr. Lasota is the correct person with authority to

6    address those issues.  So I certainly share Mr. Bove's

7    surprise and frankly disappointment that there is no one from

8    Pinnacle on the call to address those issues.

9           If Your Honor would like me to get into why, I can,

10   but I certainly want to proceed in the most efficient way.

11          THE COURT:  I can assure you that I am not really

12   interested in your disappointment.  What I am disappointed in

13   is the fact that this settlement hasn't been consummated by

14   the parties who are not in bankruptcy, including the insurers.

15          The reason for this call is to chart a path forward

16   which if it doesn't -- if there isn't some way to get this

17   resolved in the meantime, everybody is going come back to

18   Charleston, West Virginia, and it's not going to be a pleasant

19   experience.

20          So, Mr. Nelson or Mr. Long, I'll hear from you first

21   since you have a motion pending on this.

22          MR. NELSON:  Thank you, Your Honor.  This is, for the

23   court reporter, David Nelson.

24          And briefly, Your Honor, I know that you're familiar

25   with this.  But for the record, since there is a record being

7

1    made, it was about a year ago almost today, it was actually

2    May 2nd when we came before the Court trying to get a $5

3    million settlement with Target resolved.  And much to our

4    surprise, that was objected to, and the Court provided the

5    parties with an opportunity to set forth the reasons why they

6    felt that it was perhaps not in good faith.  And the Court

7    then proceeded to order -- found that there were -- there was

8    nothing close to a good reason, but yet the plaintiffs had to

9    go through that process.

10         Subsequent to that, we endured a motion asking to

11   compel us to essentially take the $5 million that had been

12   objected to and spend it on dewatering our own mine so the

13   defendants could inspect it.  That consumed frankly a huge

14   part of the litigation retention in the following three and a

15   half months.

16         Finally we got before the Court in October on two

17   months' notice to have this matter settled or have a

18   settlement conference attempted.  And plaintiff shows up

19   ready, prepared, and we believe we moved forward and in good

20   faith accomplished a settlement that the Court placed onto the

21   record.

22         Your Honor, much to our surprise, we have found out

23   that in the interim, despite also being frustrated by one of

24   the parties, major parties filing bankruptcy, we found out

25   that apparently there was -- everyone hadn't gotten their act

8

1    together on the defense side of this matter to determine how

2    much money they actually had available to pay us, despite the

3    fact that we were told clear amounts and relied upon those in

4    completing our settlement and agreeing to it.

5            Your Honor, there are only two things -- Mr. Long and

6    I have spent most of our careers doing defense work.  There

7    are only two things you have to get straight on the defense

8    side before going into a mediation, whether you believe the

9    case should be settled and are willing to, and how much money

10   you have to commit to it.  Those are two basics.

11           And what we're learning is, in the two months that

12   preceded this, apparently no one had that information, yet

13   specific amounts were offered to us and communicated to us and

14   confirmed on a record.

15           Now about two months after settlement, we learned that

16   somehow those numbers were in dispute, which was astonishing.

17   But frankly because of the bankruptcy, we were powerless to do

18   anything to bring the matter before the Court because we were

19   stayed and prevented.  On the first day that we had a chance

20   to bring this before Your Honor, we did.

21           We're extremely frustrated.  There are two issues that

22   we see that could possibly be unresolved, but we don't think

23   that either of them have anything to do with us.  One of them

24   has to do with a waiver issue or a fee dispute between a

25   putative insured and their insurance carrier over attorneys'

1    fees and defense costs.  That has nothing to do with us.  The

2    other has to do with whether amounts were still available

3    under an insurance policy that was offered to us.  Again, that

4    has nothing to do with us.

5         We simply want to move forward and complete our

6    settlement.  And if there is an issue over some sort of

7    confusion about attorneys' fees between the carrier and their

8    insured, that issue -- we actually spent about $90,000 in

9    Alabama to ensure that that issue could come before Your Honor

10   so that it could be fairly and equitably treated by a court

11   with awareness of the issue rather than the Alabama court.

12   But that issue is not our issue.  We want our settlement

13   enforced.

14        THE COURT:  An understandable request.

15        Who on the other side wants to speak first?

16        MR. BOVE:  Your Honor, this is Lou Bove for American

17   Guarantee, and I kind of echo Mr. Nelson's and Mr. Long's

18   sentiments here.

19        Just for the record, my client Zurich, American

20   Guarantee was the principal payer in the Target settlement,

21   and we were frustrated by what we thought were frivolous

22   objections to our efforts to resolve our insured's, which is

23   Target, exposure in this case, but thankfully we got through

24   that process.

25        Then we appeared before Your Honor for the two days in

10

1   the mediation in October.  We came with every penny we had

2   left under our policy, and we offered it.  I have a check here

3   for a million dollars.  It's been sitting on my desk ready to

4   pay to Bluestone.  All I need is a release, and Bluestone

5   agrees with me that's all I need, and they can have their

6   check.

7        I also helped them, frankly, get through the

8   bankruptcy case and spent a fair amount of money of my -- my

9   client's money doing so so that we could get ourselves out of

10  the bankruptcy court, so I could pay my -- the remaining

11  limit, a million dollars of my policy to Mr. Nelson and

12  Mr. Long as quickly as humanly possible.

13       And I will let them speak to this, about my

14  cooperation and my client's cooperation both in the Target

15  settlement and in this Pinnacle settlement.  This has nothing

16  to do with Zurich.  All we want to do is close our file

17  frankly, and we've been trying to pay this million dollars

18  since October.

19       So that is -- we have nothing to do with this dispute,

20  but I'll let Mr. Nelson and Mr. Long confirm that for you.

21       MR. NELSON:  Your Honor, Mr. Nelson speaking.  We can

22  confirm that.

23       MS. SORENSEN:  This is Colleen Sorensen for National

24  Union.

25       We filed a written response that kind of explains what

11

1    is going on from National Union's perspective.  Basically

2    there are multiple parties claiming a right to one set of

3    policy limits, and National Union is willing to pay whoever

4    the correct party is, but it would like guidance on who to pay

5    at this point.

6              THE COURT:  Let me just step in at this point.  I

7    started to say something, but I had my phone on mute.

8              By the way, and I should have said this in the

9    beginning, two things.  One is make sure you identify yourself

10   when you speak because there's a lot of people on the call,

11   and it helps me and the court reporter.  Number two, if you're

12   not speaking, put your phone on -- excuse me -- put your phone

13   on mute because we don't want to hear you tapping on your

14   keyboard or whatever else you might be doing in the

15   background.

16             Excuse me.  I'm recovering from a bad bout of allergy.

17             A couple comments already.  Number one, and this is

18   the most important one, you pay your money, you get your

19   release, you're out of the coming festivities, period.  So get

20   it done if you can.  And if there's not a problem, then I

21   don't see why it's not happening today.

22             Number two, if the excuse for why you haven't done

23   that is we don't know who to pay, that's ridiculous, too.

24   Just get it done.  That's not hard to figure out.  Everyone

25   needs to be working together on that.  So I want to narrow

12

1    this down to the real problems and getting the non-Pinnacle

2    part of this settlement done.

3            So who else has something to say?

4            MR. ROSE:  Your Honor, Dennis Rose for Cliffs.

5            I believe, one, Cliffs had committed at the settlement

6    to pay a million dollars.  They have the million.  We're ready

7    to pay for the release.  The issue is the payment of the AIG

8    policy, which was the policy that insured Pinnacle and Cliffs.

9            You may recall, and our papers say this, that when we

10   were at the settlement, that policy is a fronting policy which

11   means that the money that gets paid is ultimately Cliffs'

12   money.

13           When we were at the settlement, and the record is

14   clear, when Mr. Berman, who was the one who was principally

15   negotiating this, put on the record that number of 2.9, he

16   clearly said the balance of the policy.  It is a wasting

17   policy, which means every dollar that was spent on defense

18   cost is going to lower the amount that is available for

19   indemnity.

20           There -- as Mr. Nelson recited, there was significant

21   activity, much of which was caused by actions of Pinnacle and

22   their lawyers during the 50 to 75 days beforehand in which

23   there are significant defense costs that eroded.

24           Our position is there is a gap that exists between

25   whether plaintiff should receive $2.1 million or whether they

13

1    should receive the balance of the policy that was available at

2    that time.  We have no idea what number was told to

3    Mr. Nelson, we certainly didn't tell anything to them, but we

4    knew that they were going -- we were going to pay -- AIG was

5    going to pay the balance of the policy, which ultimately was

6    going to come out of Cliffs' pocket.

7            We want to get it done as well.  We believe there is a

8    settlement, it should be done.  We've been working with them

9    at least on getting a settlement agreement that would deal

10   with this issue.  But we do believe that Bluestone, when they

11   sat there and they knew the policy terms, they had a policy,

12   they knew it was a policy that wasted for attorney fees.  They

13   knew that they were told they were going to get the balance of

14   the policy, not a number certain, the balance of the policy.

15   And they didn't say we need to confirm we're going to get 2.9

16   million, not some number that is less than 2.9 million.  I

17   think everyone in that room knew it was less than 2.9 million.

18           AIG is ready to pay the balance of the policy as

19   agreed.  Cliffs is ready to pay.  And if Bluestone wants to

20   accept that, it's over today.

21           THE COURT:  Anybody else have anything to say?

22           MR. HAFNER:  Yes, Your Honor.  Charles Hafner on

23   behalf of Arch Insurance Company.

24           Our contribution to the settlement was $250,000, but

25   an added term of that was that, in exchange for that

14

1   contribution, Pinnacle agreed to provide Arch with a release

2   of any defense cost obligations.  Arch remains willing to pay

3   that $250,000.  We have no issue with that.

4          But we have been actually unable --

5          THE COURT:  All right.  I don't know who has got the

6   ice cream truck outside their office, but they need to put

7   their mute button on.

8          All right.  Go ahead.

9          MR. HAFNER:  Thank you, Your Honor.  Just to continue

10  my thought.

11         We have been trying for several months and several

12  weeks following, certainly since there was an agreement to

13  lift the bankruptcy stay as to these -- you know, this portion

14  of the proceedings, to get Pinnacle to sign the release that

15  they promised us in exchange for our contribution, and it has

16  unfortunately been radio silence from them on our efforts to

17  just get that last piece of paper in place.

18         So, you know, again, it was Mr. Berman that agreed to

19  that release in Your Honor's courtroom, not certainly in front

20  of Your Honor, but in discussions between -- private

21  discussions between me and him, that that was an understood

22  term of Arch's contribution.  We understandably would like

23  some -- just some written documentation of that.  We provided

24  that to them multiple weeks ago and have heard nothing.

25         So I understand Your Honor doesn't want to hear about

1    our frustration, as I indicated earlier in the call, but that

2    is the source of it.  So Arch remains willing to proceed on

3    that basis, but only if Pinnacle honors its end of the

4    bargain.

5            MS. SORENSEN:  This is Colleen Sorensen for National

6    Union again.

7            I just wanted to echo what Arch's counsel is saying.

8    It was National Union's understanding that it would pay the

9    remaining portion of its limits, that it was endorsing its

10   policy, and that was a condition of settlement, and now

11   Pinnacle has sent out letters demanding two million in defense

12   costs.

13           So I know it sounds silly that we don't know who to

14   pay, but the reality is we have Pinnacle demanding two million

15   from us, Bluestone who wants the settlement they think was

16   promised them, and then a dispute between our insured, Cliffs

17   and Bluestone about the amount that was promised at the

18   settlement, and we just need clarity.  Because our payment was

19   conditioned, too.

20           MR. L. LONG:  Your Honor, this is Louis Long on behalf

21   of Great Midwest.

22           We were a very small contributor to the settlement.

23   We're prepared to go forward with the settlement even though

24   it was a condition of our payment that we would receive a

25   policy release from Pinnacle.  But given Pinnacle's situation

16

1    and the bankruptcy complication right now, we're prepared to

2    move forward without that release and give Bluestone its money

3    in exchange for a suitable release, which has been in the

4    works for some time now.

5         THE COURT:  All right.  Well, this is -- again, I'm

6    going to reiterate that to the extent that pieces of the

7    settlement can get done, let's get them done.  And I would

8    encourage everybody to cooperate to get that done as quickly

9    as possible.

10        And then I will ask Mr. Nelson to send a letter to the

11   Court with a copy to remaining counsel, including carriers'

12   counsel, indicating to me exactly who is left that hasn't paid

13   on the settlement.  In 10 days from today, I want that letter.

14   So you've got 10 days to figure this out.  You've had months

15   to figure it out.  Now you've got 10 days to get it done if it

16   can get done.

17        So to the extent that it can't be done or won't be

18   done, I offer two thoughts.

19        First of all, when I spend two full days settling a

20   case, those of you who have obligations in this settlement

21   need to know that not only do I think you've made a settlement

22   with Bluestone, you've made a settlement with me, and you need

23   to consider very carefully the representations that were made

24   to the federal court in that process.  I don't take lightly

25   back-pedaling when representations are made to me.

17

1        So we can -- we'll sort this out, but I don't take

2   this situation lightly.  And I know that all of the lawyers

3   that came in for the settlement conference are very smart,

4   very experienced, and they should know what they say to a

5   federal judge needs to be something that can be taken to the

6   bank.  So I'm just going to share that with you as food for

7   thought.

8        Having said all that, once I receive Mr. Nelson's

9   letter, I'm going to set another conference.  And everybody

10  other than Pinnacle, which is in bankruptcy, everybody that

11  hasn't paid the money that they're supposed to pay is going to

12  come to Charleston, West Virginia again.  And I suggest you

13  pack a bag for a while because you're not leaving here until

14  we're done with this settlement, except to the extent --

15  except, of course, Pinnacle.

16        Anybody have any questions?

17        Hearing none, Mr. Nelson, I look forward to your

18  letter in 10 days.

19        MR. NELSON:  We will get it to you, Your Honor.

20        THE COURT:  All right.  Very well.

21        I think that it's worth noting that when people say

22  that they are going to pay money, they should pay it.  So

23  we'll sort this out at the proceeding that will be coming, and

24  I assure you it would be better for anybody that might receive

25  an invitation to that proceeding that they find a way to get

18

```
1    this resolved beforehand.

2            Everyone have a good day.

3            MR. BOVE:  Thank you, Your Honor.

4              (Proceedings were concluded at 2:27 p.m.)

5                      ---o0o---

6

7

8

9    CERTIFICATION:

10           I, Kathy L. Swinhart, Official Court Reporter, certify

11   that the foregoing is a correct transcript from the record of

12   proceedings in the matter of Bluestone Coal Corp., et al.,

13   Plaintiffs, v. Pinnacle Mining Co., LLC, et al., as reported

14   on April 25, 2019.

15

16

17   June 12, 2019
     DATE
18

19   /s/ Kathy L. Swinhart
     KATHY L. SWINHART, CSR
20

21

22

23

24

25
```

KATHY L. SWINHART, Official Court Reporter (304) 528-2244